**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Victoria Soboleski,

                Plaintiff,          Case No: 5:25-cv-11839-JEL-DRG

   v.                       Judith E. Levy
                             United States District Judge
Crumble LLC,

                           Mag. Judge: David R. Grand
             Defendant.

_____/

### DEFENDANT'S MOTION TO QUASH SUBPOENAS TO BANDWIDTH.CM CLEC, LLC AND BRAZE, INC. AND/OR FOR PROTECTIVE ORDER

Defendant Crumbl, LLC ("Crumbl"), erroneously sued as "Crumble LLC," hereby respectfully moves this Court: (i) to quash in their entirety the subpoenas issued by Plaintiff Victoria Soboleski to non-parties Bandwidth.com CLEC, LLC ("Bandwidth") and Braze, Inc. ("Braze," collectively with Bandwidth, the "Third Parties") on January 25, 2026 (the "Subpoenas"), pursuant to Rules 45(d)(3) and 26(c) of the Federal Rules of Civil Procedure; or, (ii) in the alternative, issue a protective order appropriately narrowing the scope of the Subpoenas.

The Subpoenas should be quashed or modified and/or made subject to a protective order because they seek material in which Crumbl has a business interest and claim of privilege, and because the information sought contains personally identifiable information on a large volume of individual consumers who are not part of the putative class in this case. That information is therefore irrelevant and exceeds

the scope of permissible discovery under Rule 26(b)(1).

Pursuant to Local Rule 7.1, counsel for Defendant engaged in several meet and confer communications with counsel for Plaintiff, including by video call on February 23 and March 9, 2026, and via email on several occasions between February 19 and March 20, 2026.  Through those meet and confer communications, counsel for Defendant explained the nature of this motion (the "Motion") and its legal basis. Counsel for the parties were unable to reach an agreement that would avoid the need for this Motion.  Crumbl respectfully requests that the Court schedule a hearing and hear oral argument on this Motion.

WHEREFORE, for these reasons, and for the reasons set forth in the Brief in Support which is incorporated herein by reference, Crumbl respectfully requests that the Court grant this Motion.

Dated: March 20, 2026

Respectfully submitted,

**FOLEY & LARDNER LLP**

*/s/ John J. Atallah*

John J. Atallah
Foley & Lardner LLP
555 S. Flower Street, Suite 3300
Los Angeles, CA  90071-2418
213.972.4834
jatallah@foley.com

*Counsel for Defendant*

2

# TABLE OF CONTENTS

I. RELEVANT FACTS AND PROCEDURAL HISTORY ............................2

    A.    Crumbl's Business Model ........................................................2

    B.    The Underlying Litigation and Class Definition..................2

    C.    The Third-Party Subpoenas..................................................4

II. LEGAL STANDARD ........................................................................6

III. ARGUMENT......................................................................................8

    A.    The Court Should Quash the Subpoenas...............................9

        1.    Crumbl Has Standing to Bring a Motion to Quash Because It Has a Personal Interest In The Data Sought .............9

        2.    The Court Should Quash the Subpoenas Because Disclosure of Information Sought Will Harm Crumbl and Its Customers........................................................................10

        3.    The Communications Sought by Plaintiffs Are Protected by the Common Interest Doctrine...............................13

        4.    The Information Sought Is Irrelevant .....................................14

        5.    The Information Sought is Overbroad in Time and Scope.......17

        6.    The Subpoenas Impose an Undue Burden on the Third Parties..................................................................................21

    B.    The Court May Instead Issue a Protective Order..............22

IV. CONCLUSION.................................................................................23

i

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Allen v. Howmedica Leibinger, GmhH*,
   190 F.R.D. 518 (W.D. Tenn. 1999)........................................................................10

*Am. Elec. Power Co., Inc. v. United States*,
   191 F.R.D. 132 (S.D. Ohio 1999)..........................................................................21

*Blumberg v. Ambrose*,
   No. 13-CV-15042, 2014 WL 4988380 (E.D. Mich. Oct. 7, 2014) ........................9

*Chem. & Indus. Corp. v. Druffel*,
   301 F.2d 126 (6th Cir. 1962) ..................................................................................7

*Cooey v. Strickland*,
   269 F.R.D. 643 (S.D. Ohio 2010)..........................................................................13

*Diamond Resorts U.S. Collection Dev., LLC v. Wesley Fin. Grp., LLC*,
   No. 3:20-CV-251-DCLC-DCP, 2024 WL 6969893 (E.D. Tenn. Apr. 16, 2024)15

*Dickson v. Direct Energy, LP*,
   69 F.4th 338 (6th Cir. 2023) ..................................................................................11

*E.E.O.C. v. St. John Hosp. & Med. Ctr.*,
   No. CIV.A. 12-50225, 2012 WL 3887626 (E.D. Mich. June 1, 2012)................19

*Equal Emp. Opportunity Comm'n v. Whiting-Turner Contracting Co.*,
   No. 2:21-CV-00753, 2022 WL 3206388 (M.D. Tenn. Aug. 8, 2022) ...................9

*Griffiths v. Ohio Farmers Ins. Co.*,
   No. 1:09-CV-1011, 2010 WL 2639918 (N.D. Ohio June 29, 2010)....................15

*Hendricks v. Total Quality Logistics, LLC*,
   275 F.R.D. 251 (S.D. Ohio 2011).......................................................................6, 14

*HIT NOTION LLC, Plaintiff, v. SANDERS COLLECTION INCORPORATED, Defendant.*,
   No. 24-CV-10937, 2026 WL 401193 (E.D. Mich. Feb. 12, 2026).......................9

ii

*Hogan v. Cleveland Ave Rest. Inc.*,
 No. 2:15-CV-2883, 2016 WL 7467968 (S.D. Ohio Dec. 28, 2016) ....................18

*In re Subpoena Duces Tecum Served Upon Ca,*
 *pito*, 2013 WL 499244 (E.D. Tenn. Feb. 7, 2013) ..............................................11

*In re CareSource Mgmt. Grp. Co.*,
 289 F.R.D. 251 (S.D. Ohio 2013)......................................................................22

*In re Ohio Execution Protocol Litig.*,
 845 F.3d 231 (6th Cir. 2016).........................................................................7, 8

*In re: Mod. Plastics Corp.*,
 890 F.3d 244 (6th Cir. 2018).......................................................................8, 21

*Innovation Ventures, LLC v. Custom Nutrition Lab'ys*, LLC,
 No. 12-13850, 2013 WL 2199629 (E.D. Mich. May 20, 2013)...........................6

*Large on behalf of Large v. Blazer*,
 No. 3:20-CV-1012, 2022 WL 99986 (M.D. Tenn. Jan. 10, 2022)......................15

*Libbey Glass, Inc. v. Oneida Ltd.*,
 197 F.R.D. 342 (N.D. Ohio 1999)......................................................................13

*Ligas v. Maram*,
 No. 05 C 4331, 2007 WL 4225459 (N.D. Ill. Nov. 27, 2007) ...........................19

*Long v. Tennessee Valley Auth.*,
 No. 3:09-CV-114, 2009 WL 10710417 (E.D. Tenn. Sept. 18, 2009).................22

*Morris v. Kia Motors Corp.*,
 No. 2:24-MC-51120, 2024 WL 4595116 (E.D. Mich. Oct. 28, 2024) .................7

*Parchman v. SLM Corp.*,
 896 F.3d 728 (6th Cir. 2018)...........................................................................11

*Reed v. Baxter*,
 134 F.3d 351 (6th Cir. 1998)...........................................................................13

*Rudd Equip. Co., Inc. v. Volvo Constr. Equip. N. Am., LLC*, No.,
 3:19-CV-778-DJH-CHL, 2020 WL 7496241 (W.D. Ky. June 12, 2020)...........10

iii

*Serrano v. Cintas Corp.*,
   699 F.3d 884 ......................................................................................................8

*Solek v. K & B Transportation, Inc.*,
   No. 21-CV-10442, 2021 WL 5040235 (E.D. Mich. Oct. 29, 2021) ......................9

*State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*,
   315 F.R.D. 220 (E.D. Mich. 2016)................................................................7, 15

*Surles ex rel. Johnson v. Greyhound Lines, Inc.*,
   474 F.3d 288 (6th Cir. 2007) ....................................................................... 15, 18

*Thomas v. City of Cleveland*,
   57 Fed. App'x 652 (6th Cir. 2003) ........................................................................7

*Trek, Inc. v. ITR Am., LLC*,
   No. 216CV13767SJMRSW, 2017 WL 11533311 (E.D. Mich. Nov. 9, 2017)......6

*Tyree v. Seven Hills Anaesthesia LLC*,
   No. 1:23-CV-325, 2025 WL 1993529 (S.D. Ohio July 17, 2025)......................19

*United States v. Llanez-Garcia*,
   735 F.3d 483 (6th Cir. 2013) ..............................................................................9

*Viet. Veterans of Am. v. C.I.A.*,
   2011 WL 4714000 (S.D. Ohio Oct. 6, 2011) ....................................................22

**Statutes**

47 U.S.C. § 227(c)(5)..............................................................................................2

**Rules**

Fed. R. Civ. P. 26(c).............................................................................................7, 8

Fed. R. Civ. P. 45 ........................................................................... 6, 7, 9, 11, 21, 22

iv

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Victoria Soboleski,

|  |  |  |
|---|---|---|
| | Plaintiff, | Case No: 5:25-cv-11839-JEL-DRG |
| v. | | Judith E. Levy<br>United States District Judge |
| Crumble LLC, | | Mag. Judge: David R. Grand |
| | Defendant. | |

/

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO QUASH SUBPOENAS TO BANDWIDTH.CM CLEC, LLC AND BRAZE, INC. AND/OR FOR PROTECTIVE ORDER

Plaintiff has issued vastly overreaching Subpoenas to two unaffiliated Third Parties seeking documents and depositions concerning text message data that far exceed the scope of her own complaint and this litigation as a whole. *Compare* [ECF 1] ("Complaint" or "Compl."), generally to Declaration of John J. Atallah ("Atallah Decl."), at ¶ 3, Exs. A-B, generally. These Subpoenas seek discovery without regard to relevance or proportionality limits to such an extent that any response would violate the privacy rights of Crumbl customers by unnecessarily disclosing their personal identifying information ("PII"), and as such would implicate those customers' and Crumbl's own interests in the confidentiality of such related records. In concise terms, the Subpoenas are improper because Plaintiff seeks information that is wholly irrelevant to Plaintiff's claims and the proposed putative class

1

definition, is overbroad in time and scope, will harm the privacy rights of Crumbl customers—and Crumbl by extension—if disclosed, and imposes an undue burden and expense on the Third Parties.

## I.   RELEVANT FACTS AND PROCEDURAL HISTORY

### A.   Crumbl's Business Model

Crumbl operates over 1,000 retail locations worldwide. Its business model is driven primarily by digital ordering through its mobile application and website. As a result of this digital-first approach, Crumbl must maintain extensive, sensitive, personal consumer records for its millions of customers, including names, telephone numbers, email addresses, physical addresses, payment information, and preferred store locations.  Crumbl takes its consumer data privacy obligations very seriously.[1]

### B.   The Underlying Litigation and Class Definition

On June 19, 2025, Plaintiff filed the Complaint, alleging that Crumbl violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5), by sending marketing text messages to Plaintiff's cellular telephone number thirty-one or more days after the number was registered on the National Do Not Call Registry ("DNC Registry"). *See* Compl. ¶¶ 1-15.

Plaintiff specifically claims that Crumbl delivered, or caused to be delivered, marketing text messages to her phone number in April, May, and June 2025 after

---

[1] *See* Crumbl, LLC, *Crumbl Global Privacy Policy*, CRUMBLCOOKIES.COM, https://crumblcookies.com/privacy.

her DNC Registration. *See* Compl. ¶¶ 13-15. Based on these facts, Plaintiff purports to represent a nationwide class of individuals who received similar text messages. Compl. ¶ 22-49. Specifically, Plaintiff defines the putative class as:

> All persons throughout the United States (1) who did not provide their telephone number to Crumble LLC, (2) to whom Crumble LLC delivered, or caused to be delivered, more than one voice message or text message within a 12-month period, promoting Crumble LLC goods or services, (3) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before Crumble LLC delivered, or caused to be delivered, at least two of the voice messages or text messages within the 12-month period, (4) within four years preceding the date of this complaint and through the date of class certification.

Compl. ¶ 22 (the "Class Definition"). On August 13, 2025, Crumbl filed its Answer to Plaintiff's Complaint, denying Plaintiff's allegations and asserting numerous affirmative defenses, including that Plaintiff or another person acting on her behalf enrolled Plaintiff's phone number in Crumbl's text messaging program. [ECF 5].

On September 8, 2025, Plaintiff and Crumbl (the "Parties") filed their Joint Discovery Plan and Case Management Order. [ECF 7]. On September 14, 2025, the Court entered a Scheduling Order setting discovery deadlines. [ECF 8]. On February 14, 2026, the Court entered a Stipulated Protective Order ("Stipulated PO") pertaining to the discovery process, generally. [ECF 9]. However, the Stipulated PO does not resolve the matters set forth in this Motion, as addressed further herein.

3

### C.   The Third-Party Subpoenas

On or about January 25, 2026, Plaintiff served the Subpoenas on Bandwidth and Braze, commanding each Third Party to produce documents and appear for deposition in relation to their customer engagement-based vendor relationships with Crumbl. *See* Atallah Decl., Exs. A-B, generally.  The Subpoenas are nearly identical, seeking the same nine categories of documents and designating the same seventeen topics for deposition testimony. The document requests include:

Documents sufficient to identify the number of unique telephone numbers to which Bandwidth/Braze delivered or attempted to deliver on behalf of Crumbl at least two text messages during a twelve-month period that included a solicitation;

Documents sufficient to identify the number of unique telephone numbers to which Bandwidth/Braze delivered or attempted to deliver on behalf of Crumbl at least two text messages during a twelve-month period that referenced Crumbl's products, a price for the products, and a link to purchase the products;

Documents sufficient to identify the number of unique telephone numbers to which Bandwidth/Braze delivered or attempted to deliver on behalf of Crumbl at least two text messages during a twelve-month period that referenced a link to Crumbl's website;

Documents sufficient to identify the number of unique telephone numbers to which Bandwidth/Braze delivered or attempted to deliver on behalf of Crumbl at least two text messages during a twelve-month period that referenced a discount code for Crumbl's products;

Documents sufficient to identify the number of unique telephone numbers to which Bandwidth/Braze delivered or attempted to deliver on behalf of Crumbl at least two text messages during a twelve-month period in the same form as text messages referenced in Plaintiff's Complaint;

All records of any "STOP" or other Do Not Call requests received in response to the text messages; and

Communications between Bandwidth/Braze and Crumbl that relate to this Action.

Atallah Decl., Ex. A at 3-4, Ex. B at 3-4. The Subpoenas' deposition topics (the "Topics") included, among others, all information about Plaintiff's telephone number ([XXX-XXX]-5289), each communication or attempted communication between Plaintiff and Third Parties, regardless of topic; every text message the Third Parties delivered to Plaintiff or Plaintiff's phone number, whether or not sent by or for Crumbl, the hardware and software used by the Third Parties; the number of unique telephone numbers to which two text messages were delivered within 12 months under a variety of circumstances mirroring the document requests, the names of persons that Crumbl associates with telephone numbers, and written agreements between Bandwidth/Braze and Crumbl. Atallah Decl., Exs. A at 4-6, B at 4-6. The relevant time period specified in the Subpoenas is June 19, 2021 to the present – a period exceeding four and a half years. *Id*.

On February 9, 2026, Bandwidth served written objections to its subpoena from Plaintiff (the "Bandwidth Subpoena"). Atallah Decl., Ex. C. Bandwidth objected on multiple grounds, including that the information sought by Plaintiff is irrelevant, overly broad and unduly burdensome in that it seeks more than forty-five months of data prior to when Plaintiff registered her number with the DNC Registry,

5

seeks information about all communications between Plaintiff and Bandwidth without limitation, demands every text message delivered to Plaintiff whether or not any such messages were delivered for or by Crumbl, and seeks proprietary information on Bandwidth's systems, software, and relationship with Crumbl. *Id*. at 2-3. Bandwidth stated that it would not produce any documents or appear for deposition until these issues are resolved. *Id*. at 3. To Crumbl's knowledge, Braze has not yet responded in substance to the subpoena it received from Plaintiff (the "Braze Subpoena").

## II.    LEGAL STANDARD

A court (1) must "quash or modify a subpoena" that "requires disclosure of privileged or other protected matter, if no exception or waiver applies;" and (2) may "quash or modify the subpoena" if it requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(A)-(B). Motions to quash and for protective order under FRCP 26 may be brought in the alternative. *See, e.g., Innovation Ventures, LLC v. Custom Nutrition Lab'ys*, LLC, No. 12-13850, 2013 WL 2199629, at *4 (E.D. Mich. May 20, 2013) (granting "Motion to Quash Subpoenas or for Protective Order"); *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 254 (S.D. Ohio 2011) (granting "Motion to Quash Subpoenas to Non–Parties, or in the Alternative, Motion for Protective Order"). "Courts have broad discretion in fashioning protective orders, including

that the discovery not be had." *Trek, Inc. v. ITR Am., LLC*, No. 216CV13767SJMRSW, 2017 WL 11533311, at *6 (E.D. Mich. Nov. 9, 2017), *report and recommendation adopted*, No. 2:16-CV-13767, 2017 WL 11533312 (E.D. Mich. Dec. 4, 2017). "The extent of discovery and the use of protective orders is clearly within the discretion of the trial judge. *Chem. & Indus. Corp. v. Druffel*, 301 F.2d 126, 129 (6th Cir. 1962); *see also Thomas v. City of Cleveland*, 57 Fed. App'x 652, 654 (6th Cir. 2003) (decision to quash a subpoena is "within the sound discretion of the district court").

Rule 45 of the Federal Rules of Civil Procedure governs non-party subpoenas, while and Rule 26 sets their discovery limitations. *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*, 315 F.R.D. 220, 222 (E.D. Mich. 2016) ("A subpoena to a third party under Rule 45 is subject to the same discovery limitations as those set out in Rule 26.") (internal citation omitted); Fed. R. Civ. P. 26, 45. "Courts within the Sixth Circuit have interpreted Rule 26(c) to permit a party to seek a protective order to preclude discovery demanded by a third-party subpoena." *Morris v. Kia Motors Corp.*, No. 2:24-MC-51120, 2024 WL 4595116, at *2 (E.D. Mich. Oct. 28, 2024) (internal citations omitted).

"To sustain a protective order under Rule 26(c), the moving party must show "good cause" for protection from one (or more) harms identified in Rule 26(c)(1)(A) 'with a particular and specific demonstration of fact, as distinguished from

7

stereotyped and conclusory statements.'" *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236-37 (6th Cir. 2016) (quoting *Serrano v. Cintas Corp.*, 699 F.3d 884, 901). "The enumerated harms available to support a protective order are 'annoyance, embarrassment, oppression, or undue burden or expense.'" *Id.* (quoting Fed. R. Civ. P. 26(c)(1)). "Good cause exists if specific prejudice or harm will result from the absence of a protective order." *Id.* (citation omitted). "A court must balance the "right to discovery with the need to prevent 'fishing expeditions.'" *Id.* at 236-237 (quoting *Serrano*, 699 F.3d at 902). The "[c]ourts must 'balance the need for discovery against the burden imposed on the person ordered to produce documents,' and the status of that person as a non-party is a factor." *In re: Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (citation omitted).

### III.    ARGUMENT

The Court should grant the Motion and quash the Subpoenas entirely, as Crumbl has a personal interest in the customer records and confidential commercial information sought, disclosure would cause concrete harm to Crumbl and its customers by interfering with its customer relationships and providing competitors with significant competitive advantages, the Subpoenas are overbroad, seek irrelevant information, and are fundamentally disproportionate to the needs of this case, and the demands impose an undue burden and expense on the Third Parties. If the Court does not quash the Subpoenas entirely, it should at minimum issue a

8

protective order appropriately limiting the scope of the Subpoenas to information actually relevant to the parties' claims and defenses.

### A.    The Court Should Quash the Subpoenas

### 1.    Crumbl Has Standing to Bring a Motion to Quash Because It Has a Personal Interest In The Data Sought

A movant has standing to bring a motion to quash a third-party subpoena under Rule 45 if it can assert a personal interest or claim of privilege in the information sought. *United States v. Llanez-Garcia*, 735 F.3d 483, 498-99 (6th Cir. 2013); *Equal Emp. Opportunity Comm'n v. Whiting-Turner Contracting Co.*, No. 2:21-CV-00753, 2022 WL 3206388, at *2 (M.D. Tenn. Aug. 8, 2022); *see also Solek v. K & B Transportation, Inc.*, No. 21-CV-10442, 2021 WL 5040235, at *1 (E.D. Mich. Oct. 29, 2021) (standing to quash third party subpoena is conferred if a party can demonstrate a claim of privilege or personal interest). A movant has a "personal interest" in commercial information pertaining to its customers, including "contracts, agreements, and payment information," *Blumberg v. Ambrose*, No. 13-CV-15042, 2014 WL 4988380, at *4 (E.D. Mich. Oct. 7, 2014); *HIT NOTION LLC, Plaintiff, v. SANDERS COLLECTION INCORPORATED, Defendant.*, No. 24-CV-10937, 2026 WL 401193, at *3 (E.D. Mich. Feb. 12, 2026) (a defendant "certainly has a personal interest in its own commercial information concerning sales and advertising, even if in the possession of a business partner").

Such personal interest exists for Crumbl here. The Third Parties maintain records containing Crumbl's customer names, telephone numbers, addresses, and other PII associated with their customers' voluntary enrollment in Crumbl's text messaging program. Consumers provide this PII with the expectation that such data will be kept private and safe – an expectation that Crumbl takes seriously as to all of its customers. Further, that data was provided to the Third Parties in the course of their business relationship with Crumbl, through which the parties had (and have) an expectation of privacy and confidentiality related to Crumbl's proprietary interest in its consumer data. Based on the privacy expectations of Crumbl, its customers, and the Third Parties, it is without question that Crumbl has a personal interest in records that identify its customers' telephone numbers, names, and other PII.

### 2. The Court Should Quash the Subpoenas Because Disclosure of Information Sought Will Harm Crumbl and Its Customers

Courts have recognized that it is acceptable to bar discovery where disclosure of the information sought would result in interference with a party's business relationships or harm to a party's customer relationships. *See Rudd Equip. Co., Inc. v. Volvo Constr. Equip. N. Am., LLC*, No. 3:19-CV-778-DJH-CHL, 2020 WL 7496241, at *9 (W.D. Ky. June 12, 2020) (denying motion to compel where company would suffer significant harm if "forced to produce its customer communications and transactional documents"); *Allen v. Howmedica Leibinger, GmhH*, 190 F.R.D. 518, 527 (W.D. Tenn. 1999) (denying motion to compel third-

party response to subpoena where there was substantial risk of harm from disclosure of confidential information); *HIT NOTION LLC*, 2026 WL at *3. Further, courts may quash subpoenas seeking "trade secret[s]" or "confidential . . . commercial information." Rule 45(d)(3)(A)-(B). In determining whether information is a trade secret or confidential commercial information, courts "may consider such things as" (1) the extent to which the information is known both inside and outside the business;" (2) "the precautions taken to guard the secrecy of the information;" (3) "the value of the information;" and (4) "the amount of time and expense it would take for others to acquire and duplicate the information." *Id.*; *In re Subpoena Duces Tecum Served Upon Capito*, 2013 WL 499244, at *4 (E.D. Tenn. Feb. 7, 2013).

Crumbl's business is built on customer trust. The TCPA itself was enacted "with individual privacy interests among its primary concerns" because "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy." *Dickson v. Direct Energy, LP*, 69 F.4th 338, 342 (6th Cir. 2023). The Sixth Circuit has recognized that "the primary purpose of the TCPA was to protect individuals from the harassment, invasion of privacy, inconvenience, nuisance, and other harms associated with unsolicited, automated calls." *Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018). Ironically, requiring Crumbl to disclose its customers' private information through these overbroad Subpoenas would itself constitute the very invasion of privacy that the TCPA was designed to prevent. None of Crumbl's

11

millions of customers whose PII would be included have consented to its release, nor do those customers have any involvement or interest in this litigation. The vast majority of Crumbl's customers voluntarily provided their telephone numbers to Crumbl and are expressly excluded from the putative class. It would be a breach of trust, and harm Crumbl's customer relationships, if Crumbl were required to stand by while this information is released solely to permit Plaintiff's counsel to comb through it in search of the proverbial "needles in a haystack" – persons who might fall within the narrow class definition – to pursue claims entirely unrelated to the customers whose data is subject to this search.

Further, should the confidential commercial information contained in the records sought by the Subpoenas become public, it would result in competitive harm to Crumbl. Access to the data sought by the Subpoenas would provide Crumbl's competitors with a significant competitive advantage because it could allow them to target Crumbl's customers to patronize competitor businesses. Competitors could also utilize Crumbl's vendor agreements to negotiate more favorable terms. Accordingly, allowing the disclosure of the confidential commercial information sought by the Subpoenas would cause competitive harm to Crumbl.

Because Crumbl has a personal interest in its customer data, its agreements with the Third Parties, and the records which contribute to its customer engagement strategy, and because disclosure of the information sought by the Subpoenas would

12

harm Crumbl's relationships with its customers and its competitive position, this Court should quash the Subpoenas in their entirety.

**3.     The Communications Sought by Plaintiffs Are Protected by the Common Interest Doctrine**

In addition to Crumbl's personal interest in the data sought, certain communications between Crumbl and the Third Parties are protected from disclosure under the common interest doctrine. The common interest doctrine expands the coverage of the attorney-client privilege where two or more separately or individually represented "clients with a common interest in a matter… agree to exchange information regarding the matter." *Reed v. Baxter*, 134 F.3d 351, 357 (6th Cir. 1998). Under this doctrine, "a communication of any such client that otherwise would qualify as privileged is privileged as against third parties." *Id*. The common interest doctrine applies when parties share an identical legal interest in the subject of a communication, allowing them to exchange otherwise privileged communications without waiving privilege so long as they are pursuing a shared legal objective. *Libbey Glass, Inc. v. Oneida Ltd.*, 197 F.R.D. 342, 346 (N.D. Ohio 1999); *Cooey v. Strickland*, 269 F.R.D. 643, 648 (S.D. Ohio 2010). "It is not necessary that a common legal interest be derived from legal action; it is possible for two or more parties to share a common interest without becoming parties to the same litigation." *Cooey*, 269 F.R.D. at 648.

Here, Crumbl, Bandwidth, and Braze share a common legal interest in TCPA

compliance and in defending against potential claims arising from their text messaging operations. Equally important, the three parties share a common interest in maintaining the confidentiality of Crumbl's customer data. In the course of their vendor relationships, Crumbl entrusts Bandwidth and Braze with sensitive customer PII—including names, telephone numbers, and other personal information—with the shared understanding and expectation that such data will be kept confidential. All three parties have overlapping obligations, both contractual and under applicable data privacy standards, to safeguard this information from unauthorized disclosure. Communications between Crumbl and the Third Parties concerning the protection and handling of customer data, legal compliance, messaging practices, and this litigation itself were made in furtherance of these shared legal interests and are therefore privileged. The Subpoenas' demand for "[c]ommunications between Bandwidth/Braze and Crumbl that relate to this Action" directly implicate these protected communications. Atallah Decl., Ex. A at 4, Ex. B at 4. Accordingly, the Subpoenas should be quashed to the extent they seek disclosure of communications protected by the common interest doctrine.

### 4.   The Information Sought Is Irrelevant

Rule 45 does not list irrelevance or overbreadth as reasons for quashing a subpoena. However, courts have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality*

14

*Logistics,* 275 F.R.D. at 253. "A subpoena to a third party under Rule 45 is subject to the same discovery limitations as those set out in Rule 26." *State Farm*, 315 F.R.D. at 222. Additionally, Rule 45 directs the Court to quash or modify a subpoena if it "subjects a person to undue burden." As the Subpoenas here are irrelevant, overbroad, and subject the Third Parties to an undue burden, they must be quashed.

"Although a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted 'to "go fishing" and a trial court retains discretion to determine that a discovery request is too broad and oppressive.'" *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (citation omitted). "It is within the court's discretion to quash a subpoena where the testimony or information sought is irrelevant. *Griffiths v. Ohio Farmers Ins. Co.*, No. 1:09-CV-1011, 2010 WL 2639918, at *1 (N.D. Ohio June 29, 2010). Further, "a showing of irrelevancy of proposed discovery can satisfy the good cause requirement of Rule 26(c)." *Diamond Resorts U.S. Collection Dev., LLC v. Wesley Fin. Grp., LLC*, No. 3:20-CV-251-DCLC-DCP, 2024 WL 6969893, at *6 (E.D. Tenn. Apr. 16, 2024) (quoting *Large on behalf of Large v. Blazer*, No. 3:20-CV-1012, 2022 WL 99986, at *2 (M.D. Tenn. Jan. 10, 2022)).

The first element of the Class Definition limits the class to persons "who did not provide their telephone number to Crumble LLC." Compl. ¶ 22. The Subpoenas, however, seek information about all unique telephone numbers to which text

messages were sent, including persons who affirmatively enrolled in Crumbl's text messaging program and who voluntarily provided their telephone numbers to Crumbl. *See* Atallah Decl., Exs. A-B, generally. Given that Crumbl only sends text messages to phone numbers that have been manually enrolled by consumers in Crumbl's rewards program, the vast majority of any data produced would pertain to persons who affirmatively and voluntarily provided their telephone numbers to Crumbl – persons who are expressly excluded from the putative class.

Additionally, the Subpoenas seek information about text messages that have nothing to do with Crumbl at all. Topic 5 requests testimony about "[e]ach text message [the Third Parties] delivered or attempted to deliver to Plaintiff, or to telephone number [XXX-XXX]-5289, including the date of each text message" regardless of whether any such messages were delivered for or by Crumbl. Atallah Decl., Ex. A at 5; Ex. B at 5. Similarly, Topic 2 requests information about "[e]ach communication or attempted communication between Plaintiff and [the Third Parties], or the telephone number [XXX-XXX]-5289 and [the Third Parties]" regardless of the topic of said communications or Crumbl's purported involvement. Atallah Decl., Ex. A at 4, Ex. B at 4. As such, these Subpoena demands are patently irrelevant, as the Complaint's allegations, and the Class Definition it provides, are based solely on text messages allegedly sent by or on behalf of Crumbl.

Further, the Class Definition and Plaintiff's related allegations require a

16

prospective class member to have registered their residential or cellular telephone number with the DNC Registry for at least thirty days before Crumbl delivered or caused to be delivered two text messages to the relevant number within twelve months. Compl. ¶ 22. However, only *one* of Plaintiff's topics seeks information related to Do Not Call requests, and none seek Do Not Call Registry information. *See* Atallah Decl., Exs. A-B, generally. This means that any text message sent to a person *before* their number was registered on the DNC Registry, or within thirty days of registration, is categorically irrelevant to the class definition. Despite this, the Subpoenas make no effort to account for the necessary limitation, instead demanding information that would undoubtably capture a large quantity of irrelevant consumer data. *Id.* Not only would such demands unnecessarily disclose consumer PPI in violation of expected privacy rights, but it could enable Plaintiff's counsel to fish for additional, unrelated actions in a manner which would oppress Crumbl.

Because Plaintiff's Subpoenas largely seek irrelevant prospective discovery, leading to a legitimate risk of a fishing expedition and unnecessary consumer data disclosures, the Court should exercise its discretion to quash or, in the alternative, find good cause to issue a protective order to limit Plaintiff's Subpoenas.

### 5. The Information Sought is Overbroad in Time and Scope

The Subpoenas are independently overbroad both in the generality of their requests and in their temporal scope. The court should examine, in part, whether "the

subpoena is overbroad on its face and exceeds the bounds of fair discovery. *Hogan v. Cleveland Ave Rest. Inc.*, No. 2:15-CV-2883, 2016 WL 7467968, at *1 (S.D. Ohio Dec. 28, 2016). This is because "[a]lthough a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted 'to "go fishing" and a trial court retains discretion to determine that a discovery request is too broad and oppressive.'" *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007).

Plaintiff's Subpoenas are overbroad on their face. The document requests and deposition topics sweep far beyond the putative class definition, seeking information about all telephone numbers that received text messages from Crumbl without any way to exclude persons who provided their telephone numbers to Crumbl, and without any mechanism to identify persons whose numbers were registered on the DNC Registry, as well as information unrelated to Crumbl. *See* Atallah Decl., Exs. A-B, generally. These overbroad requests should be quashed.

Additionally, the Subpoenas' temporal scope is dramatically overbroad when measured against both Plaintiff's individual claims and the putative class definition. The Subpoenas defines the relevant time period as "from June 19, 2021 to the present" – a span exceeding four and a half years. Atallah Decl., Ex. A at 4, Ex. B at 4. Yet Plaintiff's own claims arise from an extraordinarily narrow window, as she alleges that she registered her telephone number with the DNC Registry on March

18

27, 2025, and the Class Definition requires that a person's number be registered on the DNC Registry "for at least thirty days" before receiving the relevant messages. Compl. ¶¶ 12, 22. Thus, under Plaintiff's own theory and Class Definition, the earliest date on which she could have a viable claim is April 26, 2025.

Further, Plaintiff alleges that she received text messages from Crumbl in "April, May, and June 2025." Compl. ¶ 13. Accordingly, the relevant period for Plaintiff's individual claims is, at most, approximately three months. Yet the Subpoenas demand over four and a half years of data, dating back to June 19, 2021. This represents a temporal scope encompassing a period of forty-five months *predating* Plaintiff's registration on the DNC Registry, a time span approximately eighteen times broader than necessary to address Plaintiff's allegations, and which runs afoul of reasonable breadth. *See E.E.O.C. v. St. John Hosp. & Med. Ctr.*, No. CIV.A. 12-50225, 2012 WL 3887626, at *8 (E.D. Mich. June 1, 2012), *report and recommendation adopted*, No. 12-50225, 2012 WL 3888072 (E.D. Mich. Sept. 7, 2012) (reducing subpoena's relevant time period from four years to two); *see also Tyree v. Seven Hills Anaesthesia LLC*, No. 1:23-CV-325, 2025 WL 1993529, at *3 (S.D. Ohio July 17, 2025) (lowering subpoena's specified time period from two years to more relevant one month); *see also Ligas v. Maram*, No. 05 C 4331, 2007 WL 4225459, at *5 (N.D. Ill. Nov. 27, 2007) (rejecting attempted expansion of relevant time period in subpoena from three years to five years).

19

Plaintiff may argue that the four-year lookback period in the Subpoenas corresponds to the four-year limitations period referenced in the class definition. Compl. ¶ 22 (defining the class to include persons who received messages "within four years preceding the date of this complaint"). But this argument ignores the interplay between the temporal limitation and the DNC Registry requirement. Under the class definition, a person can only be a class member if their telephone number had been registered with the DNC Registry for at least thirty days before Crumbl delivered, or caused to be delivered, at least two voice messages or text messages within the 12-month period. Compl. ¶ 22. Therefore, for any potential class member, the relevant inquiry is not simply whether they received text messages at some point during the four-year period, but rather whether they received text messages *after* their number had been registered on the DNC Registry for at least thirty days.

The Subpoenas make no effort to account for this limitation, and Plaintiff has not explained, and cannot explain, the need for a four-year span of data on text messages sent before any particular recipient registered their number on the DNC Registry. Additionally, such overbreadth creates a substantial risk of unnecessary disclosure of consumer information and may be used to facilitate inquiries far beyond the claims at issue, effectively permitting Plaintiff's counsel to embark on an open-ended search for new grievances both within and outside of the instant

20

litigation. Given this overbreadth, there is good cause to quash the subpoenas in their entirety or, in the alternative, issue a protective order.

### 6.    The Subpoenas Impose an Undue Burden on the Third Parties

Rule 45(d)(1) requires that a party serving a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). "Undue burden is to be assessed in a case-specific manner considering 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *In re: Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (quoting *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)). "Courts must 'balance the need for discovery against the burden imposed on the person ordered to produce documents,' and the status of that person as a non-party is a factor." *Id*. Plaintiff has not taken remotely reasonable steps to avoid said burden, instead serving expansive Subpoenas demanding nine categories of documents and seventeen topics of deposition testimony from two non-parties with no connection to her claims. Such overbreadth cannot be permitted.

Bandwidth has objected to its Subpoena on these exact grounds, asserting that it is "unduly burdensome, especially in light of the breadth and possible volume of the documents requested." Atallah Decl., Ex. C at 1. Bandwidth's further objection

21

that Plaintiff has "either issued [the subpoena] prior to exhausting party discovery, or the materials and information [she is] seeking from Bandwidth CLEC have already been produced through party discovery," is precisely the reasoning courts have used in squashing or limiting third party subpoenas. *See In re CareSource Mgmt. Grp. Co.*, 289 F.R.D. 251, 254 (S.D. Ohio 2013) (holding that party must establish that it cannot obtain discoverable information from a party-opponent before subpoenaing the information from a third party); *see also Long v. Tennessee Valley Auth.*, No. 3:09-CV-114, 2009 WL 10710417, at *4 (E.D. Tenn. Sept. 18, 2009) (overbroad requests are troublesome in light of an entity's status as a nonparty).

Here, the balance tips decisively in favor of the non-parties. They have no stake in this litigation, yet Plaintiff seeks to impose significant burdens on them to produce information that is largely irrelevant to the claims at issue. Given this undue burden, the Court must quash the Subpoenas, in accordance with Rule 45(d)(iv), or issue a protective order in the alternative.

### B.     The Court May Instead Issue a Protective Order

Crumbl respectfully requests that, if it does not quash the Subpoena entirely, this Court modify the Subpoena to bar customer PII and confidential commercial information from being produced, and to bring the subpoena more closely to the scope of permissible discovery appropriate in this case. See, e.g., *Viet. Veterans of*

22

*Am. v. C.I.A.*, 2011 WL 4714000, at *1 (S.D. Ohio Oct. 6, 2011) (modifying subpoena to permit limited discovery). The Court could, for example:

1. Specifically limit production only to information for individuals who could realistically fall within the class definition (i.e., persons who did not provide their telephone numbers to Crumbl), to the extent Plaintiff is able to demonstrate a reliable methodology for determining who would fall into that category;

2. Narrow the document requests to eliminate the production of individual customer records and permit only the production of aggregated data, thereby safeguarding individual PII for Crumbl's customers;

3. Narrow the time period covered by the Subpoenas to correspond to the relevant period under the Class Definition (*i.e.*, text messages sent to numbers registered on the DNC Registry for at least thirty days); and

4. Expressly exclude from production defined categories of customer PII, such as (1) name, address, and email, (2) identification numbers of any kind, (3) payment, billing, or other financial details, and (4) past purchase history.

## IV. CONCLUSION

For the foregoing reasons, Crumbl respectfully requests that this Court grant its Motion to Quash, or in the alternative, issue a protective order limiting the scope of the Subpoenas to the Third Parties.

23

Dated: March 20, 2026                     Respectfully submitted,

                                               **FOLEY & LARDNER LLP**

                                             */s/ John J. Atallah*

                                             John J. Atallah
                                             Foley & Lardner LLP
                                             555 S. Flower Street, Suite 3300
                                             Los Angeles, CA  90071-2418
                                             213.972.4834
                                             jatallah@foley.com

                                             *Counsel for Defendant*

24