**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

Victoria Soboleski,

                Plaintiff,

  v.

Crumble LLC,

                Defendant.

Case No: 5:25-cv-11839-JEL-DRG

Judith E. Levy
United States District Judge

Mag. Judge: David R. Grand

/

## DEFENDANT CRUMBL LLC'S MOTION TO QUASH PLAINTIFF'S SUBPOENAS TO BANDWIDTH.COM CLEC, LLC AND BRAZE, INC. AND/OR FOR PROTECTIVE ORDER

Defendant Crumbl, LLC ("Crumbl"), erroneously sued as "Crumble LLC," hereby respectfully moves this Court: (i) to quash in their entirety the subpoenas issued by Plaintiff Victoria Soboleski to non-parties Bandwidth.com CLEC, LLC ("Bandwidth") and Braze, Inc. ("Braze," collectively with Bandwidth, the "Third Parties") on January 25, 2026 (the "Subpoenas"), pursuant to Rules 45(d)(3) and 26(c) of the Federal Rules of Civil Procedure; or, (ii) in the alternative, issue a protective order appropriately narrowing the scope of the Subpoenas.

The Subpoenas should be quashed or modified and made subject to a protective order because the information sought contains sensitive and protected personally identifiable information for a large volume of individual consumers who are not part of the putative class in this case and who have not consented to the

1

release of their personally identifiable information.  Disclosure of this information would violate the privacy rights of these individual non-party consumers.  This information is therefore irrelevant and exceeds the scope of permissible discovery under Rule 26(b)(1).  Further, the subpoenaed data is not reasonably necessary to satisfy any requirement of Rule 23, as Crumbl has offered to stipulate as to numerosity, and Plaintiff can pursue class certification through less invasive means.

Pursuant to Local Rule 7.1, counsel for Defendant engaged in several meet and confer communications with counsel for Plaintiff, including by video call on February 23 and March 9, 2026, and via email on several occasions between February 19 and March 20, 2026. The parties additionally participated in two discovery conferences with the Court in an attempt to resolve the issues raised in this Motion.  Despite those efforts, the parties were unable to reach an agreement that would avoid the need for this Motion.

Crumbl respectfully requests that the Court schedule a hearing for oral argument on this Motion.

WHEREFORE, for these reasons, and for the reasons set forth in the Brief in Support, which is incorporated herein by reference, Crumbl respectfully requests that the Court grant this Motion.

//

//

2

Dated: June 18, 2026                    Respectfully submitted,

                                        **FOLEY & LARDNER LLP**


                                         */s/ John J. Atallah*

                                        John J. Atallah
                                        Foley & Lardner LLP
                                        555 S. Flower Street, Suite 3300
                                        Los Angeles, CA  90071-2418
                                        213.972.4834
                                        jatallah@foley.com

                                        *Counsel for Defendant*

# TABLE OF CONTENTS

I.    RELEVANT FACTS AND PROCEDURAL HISTORY ..............................2

    A.    Crumbl's Business Model ........................................................2

    B.    The Underlying Litigation and Class Definition................................2

    C.    The Third-Party Subpoenas....................................................4

II.    LEGAL STANDARD ...............................................................6

III.    ARGUMENT........................................................................7

    A.    The Court Should Quash the Subpoenas.................................8

        1.    Crumbl Has Standing to Bring a Motion to Quash Because It Has a Personal Interest In The Data Sought .............8

        2.    The Court Should Quash the Subpoenas Because Disclosure of Information Sought Will Harm Crumbl and Its Customers...........................................................9

        3.    The Communications Sought by Plaintiff Are Protected by the Common Interest Doctrine.................................11

        4.    The Information Sought Is Irrelevant ....................................13

        5.    The Information Sought is Overbroad in Time and Scope.......15

        6.    The Subpoenas Impose an Undue Burden on the Third Parties................................................................18

    B.    Plaintiff Does Not Need the Subpoenaed Data to Seek Class Certification.......................................................................19

    C.    The Court May Instead Issue a Protective Order.............................24

IV.    CONCLUSION.......................................................................24

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Howmedica Leibinger, GmhH,*
190 F.R.D. 518 (W.D. Tenn. 1999)..................................................................9

*Am. Elec. Power Co., Inc. v. United States,*
191 F.R.D. 132 (S.D. Ohio 1999)..................................................................18

*Beattie v. CenturyTel, Inc.,*
511 F.3d 554 (6th Cir. 2007)..........................................................................20

*Blumberg v. Ambrose,*
2014 WL 4988380 (E.D. Mich. Oct. 7, 2014).................................................8

*Chem. & Indus. Corp. v. Druffel,*
301 F.2d 126 (6th Cir. 1962)............................................................................6

*Cole v. City of Memphis,*
839 F.3d 530 (6th Cir. 2016)..........................................................................21

*Diamond Resorts U.S. Collection Dev., LLC v. Wesley Fin. Grp., LLC,*
2024 WL 6969893 (E.D. Tenn. Apr. 16, 2024) ..............................................13

*Dickson v. Direct Energy, LP,*
69 F.4th 338 (6th Cir. 2023)...........................................................................10

*E.E.O.C. v. St. John Hosp. & Med. Ctr.,*
2012 WL 3887626 (E.D. Mich. June 1, 2012).................................................17

*Griffiths v. Ohio Farmers Ins. Co.,*
2010 WL 2639918 (N.D. Ohio June 29, 2010)................................................13

*Hendricks v. Total Quality Logistics,*
275 F.R.D. 251 (S.D. Ohio 2011)...................................................................13

*Hit Notion LLC, v. Sanders Collection Inc.,*
2026 WL 401193 (E.D. Mich. Feb. 12, 2026) .................................................8

ii

*Hogan v. Cleveland Ave Rest. Inc.*,
2016 WL 7467968 (S.D. Ohio Dec. 28, 2016)......................................................15

*Id.*; *In re Subpoena Duces Tecum Served Upon Ca,*
*pito*, 2013 WL 499244 (E.D. Tenn. Feb. 7, 2013) ..............................................10

*In re Ohio Execution Protocol Litig.*,
845 F.3d 231 (6th Cir. 2016)...............................................................................7

*In re Skelaxin (Metaxalone) Antitrust Litigation*,
292 F.R.D. 544 (E.D. Tenn. 2013)......................................................................23

*In re: Mod. Plastics Corp.*,
890 F.3d 244 (6th Cir. 2018)...................................................................... 7, 18, 19

*Innovation Ventures, LLC v. Custom Nutrition Lab'ys*, LLC,
2013 WL 2199629 (E.D. Mich. May 20, 2013).....................................................6

*Libbey Glass, Inc. v. Oneida Ltd.*,
197 F.R.D. 342 (N.D. Ohio 1999).......................................................................12

*Ligas v. Maram*,
2007 WL 4225459 (N.D. Ill. Nov. 27, 2007)......................................................17

*Mantolete v. Bolger*,
767 F.2d 1416 (9th Cir. 1985).............................................................................19

*Nash v. City of Oakwood*,
90 F.R.D. 633 (S.D. Ohio 1981)................................................................... 19, 20

*Nat'l Org. for Women v. Sperry Rand*,
88 F.R.D. 272 (D. Conn. 1980)...........................................................................20

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999) ...........................................................................................22

*Parchman v. SLM Corp.*,
896 F.3d 728 (6th Cir. 2018)..............................................................................10

*Peterson v. Medtronic, Inc.*,
2018 WL 11240431 (W.D. Tenn. May 10, 2018)......................................... 19, 23

iii

*Randleman v. Fidelity Nat'l Title Ins. Co.*,
   646 F.3d 347 (6th Cir. 2011) ............................................................................22

*Reed v. Baxter*,
   134 F.3d 351 (6th Cir. 1998) ............................................................................12

*Rikos v. Procter & Gamble Co.*,
   799 F.3d 497 (6th Cir. 2015) ............................................................................21

*Rudd Equip. Co., Inc. v. Volvo Constr. Equip. N. Am., LLC*,
   2020 WL 7496241 (W.D. Ky. June 12, 2020) .................................................9, 10

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*,
   863 F.3d 460 (6th Cir. 2017) ............................................................................20

*State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*,
   315 F.R.D. 220 (E.D. Mich. 2016) ......................................................................7

*Surles ex rel. Johnson v. Greyhound Lines, Inc.*,
   474 F.3d 288 (6th Cir. 2007) ............................................................................13

*Trek, Inc. v. ITR Am., LLC*,
   2017 WL 11533311 (E.D. Mich. Nov. 9, 2017) ...................................................6

*Tyree v. Seven Hills Anaesthesia LLC*,
   2025 WL 1993529 (S.D. Ohio July 17, 2025) ....................................................17

*United States v. Llanez-Garcia*,
   735 F.3d 483 (6th Cir. 2013) ..............................................................................8

*Viet. Veterans of Am. v. C.I.A.*,
   2011 WL 4714000 (S.D. Ohio Oct. 6, 2011) .....................................................24

*Young v. Nationwide Mut. Ins. Co.*,
   693 F.3d 532 (6th Cir. 2012) ............................................................................21

**Statutes**

47 U.S.C. § 227(c)(5) .............................................................................................2

**Rules**

Federal Rule of Civil Procedure 23 ........................................................................6

Federal Rule of Civil Procedure 26 ................................................................ 6, 7, 13

Federal Rule of Civil Procedure 45 .................................................... 6, 7, 8, 10, 13

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Victoria Soboleski,

                   Plaintiff,         Case No: 5:25-cv-11839-JEL-DRG

 v.                                  Judith E. Levy
                                      United States District Judge

Crumble LLC,

                                    Mag. Judge: David R. Grand
                   Defendant.

_____/

### BRIEF IN SUPPORT OF DEFENDANT CRUMBL LLC'S MOTION TO QUASH PLAINTIFF'S SUBPOENAS TO BANDWIDTH.COM CLEC, LLC AND BRAZE, INC. AND/OR FOR PROTECTIVE ORDER

Plaintiff has issued vastly overreaching and overbroad Subpoenas to two unaffiliated Third Parties seeking sensitive and protected consumer information of non-putative class members that that far exceeds the scope of her complaint and this litigation as a whole. *Compare* [ECF 1] ("Complaint" or "Compl."), generally to Declaration of John J. Atallah ("Atallah Decl."), at ¶ 3, Exs. A-B, generally. These Subpoenas seek discovery without regard to relevance or proportionality limits. More to the point, production of the sought information would violate the privacy rights of Crumbl customers by unnecessarily disclosing their personal identifying information ("PII"), and would implicate those customers' and Crumbl's own interests in the confidentiality of such related records. The discovery sought is improper for several reasons: (1) Plaintiff seeks information that is wholly irrelevant

1

to Plaintiff's claims and the proposed class definition; (2) the Subpoena requests are overbroad in time and scope; (3) disclosure would violate the privacy rights of Crumbl customers and, by extension, Crumbl itself; and (4) the requests impose an undue burden and expense on the Third Parties. As discussed in detail below, the discovery sought is not necessary to satisfy any requirement of Rule 23, and Plaintiff can pursue class certification through less invasive means that do not require the wholesale disclosure of consumers' sensitive and protected PII.

## I.   RELEVANT FACTS AND PROCEDURAL HISTORY

### A.   Crumbl's Business Model

Crumbl operates over 1,000 retail locations worldwide. Its business model is driven primarily by digital ordering through its mobile application and website. As a result of this digital-first approach, Crumbl must maintain extensive, sensitive, personal consumer records for its millions of customers, including names, telephone numbers, email addresses, physical addresses, payment information, and preferred store locations.  Crumbl takes its consumer data privacy obligations very seriously.[1]

### B.   The Underlying Litigation and Class Definition

On June 19, 2025, Plaintiff filed the Complaint, alleging that Crumbl violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5), by sending marketing text messages to Plaintiff's cellular telephone number thirty-one

---

[1] *See* Crumbl, LLC, *Crumbl Global Privacy Policy*, CRUMBLCOOKIES.COM, https://crumblcookies.com/privacy.

or more days after the number was registered on the National Do Not Call Registry

("DNC Registry"). *See* Compl. ¶¶ 1-15.

Plaintiff specifically claims that Crumbl delivered, or caused to be delivered,

marketing text messages to her phone number in April, May, and June 2025 after

her DNC Registration. *See* Compl. ¶¶ 13-15. Based on these facts, Plaintiff seeks to

represent a nationwide class of individuals who received similar text messages.

Compl. ¶ 22-49. Plaintiff defines the putative class as:

> All persons throughout the United States (1) who did not provide their telephone number to Crumble LLC, (2) to whom Crumble LLC delivered, or caused to be delivered, more than one voice message or text message within a 12-month period, promoting Crumble LLC goods or services, (3) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before Crumble LLC delivered, or caused to be delivered, at least two of the voice messages or text messages within the 12-month period, (4) within four years preceding the date of this complaint and through the date of class certification.

Compl. ¶ 22 (the "Class Definition"). On August 13, 2025, Crumbl filed its Answer

to Plaintiff's Complaint, denying Plaintiff's allegations and asserting numerous

affirmative defenses, including that Plaintiff or another person acting on her behalf

enrolled Plaintiff's phone number in Crumbl's text messaging program, thereby

providing prior express written consent. [ECF 5].

On September 8, 2025, Plaintiff and Crumbl (the "Parties") filed their Joint

Discovery Plan and Case Management Order. [ECF 7]. On September 14, 2025, the

Court entered a Scheduling Order setting discovery deadlines. [ECF 8]. On February

14, 2026, the Court entered a Stipulated Protective Order ("Stipulated PO")

pertaining to the discovery process, generally. [ECF 9].  However, the Stipulated PO

does not resolve the matters set forth in this Motion, as addressed further herein.

### C.    The Third-Party Subpoenas

On or about January 25, 2026, Plaintiff served the Subpoenas on Bandwidth

and Braze, instructing each Third Party to produce documents and appear for

deposition in relation to their customer engagement-based vendor relationships with

Crumbl. *See* Atallah Decl., Exs. A-B, generally.  The Subpoenas are nearly identical,

seeking the same nine categories of documents and designating the same seventeen

topics for deposition testimony. The document requests seek: (i) documents

identifying unique telephone numbers that received at least two text messages within

a twelve-month period under various circumstances (e.g., containing solicitations,

product references, discount codes, or links to Crumbl's website); (ii) documents

identifying unique telephone numbers that received text messages in the same form

as those referenced in Plaintiff's Complaint; (iii) records of any "STOP" or other Do

Not Call requests; and (iv) communications between the Third Parties and Crumbl

relating to this Action. Atallah Decl., Ex. A at 3-4, Ex. B at 3-4.

The Subpoenas' deposition topics (the "Topics") include, among others: all

information about Plaintiff's telephone number ([XXX-XXX]-5289); each

communication or attempted communication between Plaintiff and the Third Parties,

4

regardless of topic; every text message the Third Parties delivered to Plaintiff or Plaintiff's phone number, whether or not sent by or for Crumbl; the hardware and software used by the Third Parties; the number of unique telephone numbers to which two text messages were delivered within 12 months under a variety of circumstances mirroring the document requests; the names of persons that Crumbl associates with telephone numbers; and written agreements between Bandwidth/Braze and Crumbl. Atallah Decl., Exs. A at 4-6, B at 4-6. The relevant time period specified in the Subpoenas is June 19, 2021, to the present. *Id*.

On February 9, 2026, Bandwidth served written objections to its subpoena from Plaintiff ("Bandwidth Subpoena"). Atallah Decl., Ex. C. Bandwidth objected on multiple grounds, including that the information sought is irrelevant, overly broad and unduly burdensome in that it seeks more than forty-five months of data prior to Plaintiff's DNC registration, seeks information about all communications between Plaintiff and Bandwidth without limitation, demands every text message delivered to Plaintiff whether or not sent by or for Crumbl, and seeks proprietary information on Bandwidth's systems and relationship with Crumbl. *Id*. at 2-3. Braze has not responded in substance to its subpoena (the "Braze Subpoena").

On March 20, 2026, Crumbl filed its original Motion to Quash or for Protective Order. [ECF 10]. Thereafter, the parties requested a discovery conference to address the disputed Subpoenas. The Court held discovery conferences on May

12, 2026, and June 9, 2026. For the first time, at the June 9 conference, Plaintiff expanded her justification for the Subpoenas beyond numerosity—asserting that the subpoenaed third-party data is necessary to satisfy ascertainability, typicality, commonality, and predominance under Federal Rule of Civil Procedure 23. Conveniently, Plaintiff's assertion came after Crumbl agreed to stipulate to numerosity as a means of resolving this discovery dispute. The Court ordered full briefing on the issues raised and permitted Crumbl to file this renewed Motion.

## II.   LEGAL STANDARD

A court (1) must "quash or modify a subpoena" that "requires disclosure of privileged or other protected matter, if no exception or waiver applies;" and (2) may "quash or modify the subpoena" if it requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(A)-(B). Motions to quash and for protective order under FRCP 26 may be brought in the alternative. *See, e.g., Innovation Ventures, LLC v. Custom Nutrition Lab'ys*, LLC, 2013 WL 2199629, at *4 (E.D. Mich. May 20, 2013). "Courts have broad discretion in fashioning protective orders, including that the discovery not be had." *Trek, Inc. v. ITR Am., LLC*, 2017 WL 11533311, at *6 (E.D. Mich. Nov. 9, 2017), *R&R adopted*, 2017 WL 11533312 (E.D. Mich. Dec. 4, 2017). "The extent of discovery and the use of protective orders is clearly within the discretion of the trial judge. *Chem. & Indus. Corp. v. Druffel*, 301 F.2d 126, 129 (6th Cir. 1962).

Federal Rule 45 governs non-party subpoenas, while Rule 26 sets their discovery limitations. *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*, 315 F.R.D. 220, 222 (E.D. Mich. 2016) ("A subpoena to a third party under Rule 45 is subject to the same discovery limitations as those set out in Rule 26.") (citation omitted). "To sustain a protective order under Rule 26(c), the moving party must show "good cause" for protection from one (or more) harms identified in Rule 26(c)(1)(A) 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236-37 (6th Cir. 2016) (quotation omitted). "Good cause exists if specific prejudice or harm will result from the absence of a protective order." *Id*. (citation omitted). The "[c]ourts must 'balance the need for discovery against the burden imposed on the person ordered to produce documents,' and the status of that person as a non-party is a factor." *In re: Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (citation omitted).

## III.   ARGUMENT

The Court should grant the Motion and quash the Subpoenas entirely. Crumbl has standing to challenge the Subpoenas because it has a personal interest in the customer records and confidential commercial information sought. Disclosure would cause concrete harm to Crumbl and its customers—violating customer privacy, interfering with Crumbl's customer relationships, and providing

7

competitors with significant competitive advantages. In addition, certain communications sought are protected by the common interest doctrine. Even apart from these concerns, the Subpoenas are overbroad, seek irrelevant information, and are fundamentally disproportionate to the needs of this case. Nor does Plaintiff need the subpoenaed data to pursue class certification. If, however, the Court does not quash the Subpoenas entirely, it should at minimum issue a protective order appropriately limiting the scope of the Subpoenas to information actually relevant to the parties' claims and defenses.

### A. The Court Should Quash the Subpoenas

### 1. Crumbl Has Standing to Bring a Motion to Quash Because It Has a Personal Interest In The Data Sought

A movant has standing to bring a motion to quash a third-party subpoena under Rule 45 if it can assert a personal interest or claim of privilege in the information sought. *United States v. Llanez-Garcia*, 735 F.3d 483, 498-99 (6th Cir. 2013). A movant has a "personal interest" in commercial information pertaining to its customers, including "contracts, agreements, and payment information." *Blumberg v. Ambrose*, 2014 WL 4988380, at *4 (E.D. Mich. Oct. 7, 2014); *Hit Notion LLC, v. Sanders Collection Inc.*, 2026 WL 401193, at *3 (E.D. Mich. Feb. 12, 2026) (a defendant "certainly has a personal interest in its own commercial information . . . even if in the possession of a business partner").

8

Such personal interest exists for Crumbl here. The Third Parties maintain records containing Crumbl's customer names, telephone numbers, addresses, and other PII associated with their customers' voluntary enrollment in Crumbl's text messaging program. Consumers provide this PII with the expectation that such data will be kept private and safe, an expectation that Crumbl takes seriously as to all of its customers. Further, that data was provided to the Third Parties in the course of their business relationship with Crumbl, through which the parties had (and have) an expectation of privacy and confidentiality related to Crumbl's proprietary interest in its consumer data. Based on the privacy expectations of Crumbl, its customers, and the Third Parties, it is without question that Crumbl has a personal interest in records that identify its customers' telephone numbers, names, and other PII.

**2.      The Court Should Quash the Subpoenas Because Disclosure of Information Sought Will Harm Crumbl and Its Customers**

Courts have recognized that it is acceptable to bar discovery where disclosure would result in interference with a party's business relationships or harm to a party's customer relationships. *See Rudd Equip. Co., Inc. v. Volvo Constr. Equip. N. Am., LLC*, 2020 WL 7496241, at *9 (W.D. Ky. June 12, 2020) (denying motion to compel where company would suffer significant harm if "forced to produce its customer communications and transactional documents"); *Allen v. Howmedica Leibinger, GmhH*, 190 F.R.D. 518, 527 (W.D. Tenn. 1999) (denying motion to compel third-party response to subpoena where there was substantial risk of harm from disclosure

9

of confidential information); *Hit Notion LLC*, 2026 WL at *3. Further, courts may quash subpoenas seeking "trade secret[s]" or "confidential . . . commercial information." Rule 45(d)(3)(A)-(B). In determining whether information is a trade secret or confidential commercial information, courts "may consider such things as" (1) the extent to which the information is known both inside and outside the business;" (2) "the precautions taken to guard the secrecy of the information;" (3) "the value of the information;" and (4) "the amount of time and expense it would take for others to acquire and duplicate the information." *Id.*; *In re Subpoena Duces Tecum Served Upon Capito*, 2013 WL 499244, at *4 (E.D. Tenn. Feb. 7, 2013).

Crumbl's business is built on customer trust. The TCPA itself was enacted "with individual privacy interests among its primary concerns" because "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy." *Dickson v. Direct Energy, LP*, 69 F.4th 338, 342 (6th Cir. 2023). The Sixth Circuit has recognized that "the primary purpose of the TCPA was to protect individuals from the harassment, invasion of privacy, inconvenience, nuisance, and other harms associated with unsolicited, automated calls." *Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018). Ironically, requiring Crumbl to disclose its customers' private information through these overbroad Subpoenas would itself constitute the very invasion of privacy that the TCPA was designed to prevent. None of Crumbl's millions of customers whose PII would be included have consented to its release,

10

nor do those customers have any involvement or interest in this litigation. The overwhelming majority of Crumbl's customers voluntarily provided their telephone numbers to Crumbl and are expressly excluded from the putative class. It would be a breach of trust, and harm Crumbl's customer relationships, if Crumbl were required to release this information solely to permit Plaintiff's counsel to comb through it in search of the proverbial "needles in a haystack"—persons who might fall within the narrow class definition—to pursue claims entirely unrelated to the customers whose data is subject to this search.

Further, should the confidential commercial information contained in the records sought by the Subpoenas become public, it would cause competitive harm to Crumbl. Access to the data sought by the Subpoenas would provide Crumbl's competitors with a significant competitive advantage because it could allow them to target Crumbl's customers and utilize Crumbl's vendor agreements to negotiate more favorable terms. Accordingly, allowing the disclosure of the information sought by the Subpoenas would cause substantial harm to Crumbl.

Because Crumbl has a personal interest in its customer data and agreements with the Third Parties, and because disclosure would harm Crumbl's customer relationships and competitive position, this Court should quash the Subpoenas.

### 3.   The Communications Sought by Plaintiff Are Protected by the Common Interest Doctrine

In addition to Crumbl's personal interest in the data sought, certain

11

communications between Crumbl and the Third Parties are protected from disclosure under the common interest doctrine, which expands the coverage of the attorney-client privilege where "clients with a common interest … agree to exchange information regarding the matter." *Reed v. Baxter*, 134 F.3d 351, 357 (6th Cir. 1998); *Libbey Glass, Inc. v. Oneida Ltd.*, 197 F.R.D. 342, 346 (N.D. Ohio 1999).

Here, Crumbl, Bandwidth, and Braze share a common legal interest in defending against potential claims arising from their text messaging operations. Equally important, the three parties share a common interest in maintaining the confidentiality of Crumbl's customer data and protecting the privacy rights of Crumbl's customers. In the course of their vendor relationships, Crumbl entrusts Bandwidth and Braze with sensitive customer PII—including names, telephone numbers, and other personal information—with the shared understanding and expectation that such data will be kept confidential. All three parties have overlapping obligations, both contractual and under applicable data privacy standards, to safeguard this information from unauthorized disclosure. Communications between Crumbl and the Third Parties concerning the protection and handling of customer data, legal compliance, messaging practices, and this litigation itself were made in furtherance of these shared legal interests and are therefore privileged. The Subpoenas' demand for "[c]ommunications between Bandwidth/Braze and Crumbl that relate to this Action" directly implicate these

12

protected communications. Atallah Decl., Ex. A at 4, Ex. B at 4. Accordingly, the Subpoenas should be quashed to the extent they seek such communications.

### 4.      The Information Sought Is Irrelevant

The scope of discovery under a subpoena is the same as the scope of discovery under Rule 26. *Hendricks v. Total Quality Logistics,* 275 F.R.D. 251, 253 (S.D. Ohio 2011). Additionally, Rule 45 directs the Court to quash or modify a subpoena if it "subjects a person to undue burden." As the Subpoenas here are irrelevant, overbroad, and subject the Third Parties to an undue burden, they must be quashed.

"Although a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted 'to "go fishing" and a trial court retains discretion to determine that a discovery request is too broad and oppressive.'" *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (citation omitted). "It is within the court's discretion to quash a subpoena where the testimony or information sought is irrelevant. *Griffiths v. Ohio Farmers Ins. Co.*, 2010 WL 2639918, at *1 (N.D. Ohio June 29, 2010). Further, "a showing of irrelevancy of proposed discovery can satisfy the good cause requirement of Rule 26(c)." *Diamond Resorts U.S. Collection Dev., LLC v. Wesley Fin. Grp., LLC*, 2024 WL 6969893, at *6 (E.D. Tenn. Apr. 16, 2024).

The first element of the Class Definition limits the class to persons "who did not provide their telephone number to Crumble LLC." Compl. ¶ 22. The Subpoenas,

13

however, seek information about all unique telephone numbers to which text messages were sent, including persons who enrolled in Crumbl's text messaging program and who voluntarily provided their telephone numbers to Crumbl. *See generally*, Atallah Decl., Exs. A-B. Given that Crumbl only sends text messages to phone numbers that have been manually enrolled by consumers in Crumbl's rewards program, the overwhelming majority of any data produced would pertain to persons who affirmatively and voluntarily provided their telephone numbers to Crumbl— persons who are expressly excluded from the putative class.

Additionally, the Subpoenas seek information about text messages that have nothing to do with Crumbl at all. Topic 5 requests testimony about "[e]ach text message [the Third Parties] delivered or attempted to deliver to Plaintiff, or to telephone number [XXX-XXX]-5289, including the date of each text message" regardless of whether any such messages were delivered for or by Crumbl. Atallah Decl., Ex. A at 5; Ex. B at 5. Similarly, Topic 2 requests information about "[e]ach communication or attempted communication between Plaintiff and [the Third Parties], or the telephone number [XXX-XXX]-5289 and [the Third Parties]" regardless of the topic of said communications or Crumbl's purported involvement. Atallah Decl., Ex. A at 4, Ex. B at 4. As such, these Topics are patently irrelevant, as the Complaint's allegations, and the Class Definition it provides, are based solely on text messages allegedly sent by or on behalf of Crumbl.

14

Further, the Class Definition and Plaintiff's related allegations require a prospective class member to have registered their residential or cellular telephone number with the DNC Registry for at least thirty days before Crumbl delivered or caused to be delivered two text messages to the relevant number within twelve months. Compl. ¶ 22. This means that any text message sent to a person *before* their number was registered on the DNC Registry, or within thirty days of registration, is categorically irrelevant to the class definition. Despite this, the Subpoenas make no effort to account for the necessary limitation, instead demanding information that would undoubtedly capture a large quantity of irrelevant consumer data. *Id.* Not only would such demands unnecessarily disclose consumer PII in violation of expected privacy rights, but it could enable Plaintiff's counsel to fish for additional, unrelated actions in a manner which would oppress and impose an undue burden on Crumbl.

Because Plaintiff's Subpoenas largely seek irrelevant prospective discovery, the Court should exercise its discretion to quash or, in the alternative, find good cause to issue a protective order limiting Plaintiff's Subpoenas.

### 5.     The Information Sought is Overbroad in Time and Scope

The Subpoenas are independently overbroad both in the generality of their requests and in their temporal scope. The court should examine, in part, whether "the subpoena is overbroad on its face and exceeds the bounds of fair discovery. *Hogan v. Cleveland Ave Rest. Inc.*, 2016 WL 7467968, at *1 (S.D. Ohio Dec. 28, 2016).

15

Here, Plaintiff's Subpoenas are overbroad on their face. The document requests and deposition topics sweep far beyond the putative class definition, seeking information about all telephone numbers that received text messages from Crumbl without any way to exclude persons who voluntarily provided their telephone numbers to Crumbl, and without any mechanism to identify persons whose numbers were registered on the DNC Registry or exclude information unrelated to Crumbl. *See* Atallah Decl., Exs. A-B, generally. These overbroad requests should be quashed.

Additionally, the Subpoenas' temporal scope is dramatically overbroad when measured against both Plaintiff's individual claims and the putative class definition. The Subpoenas defines the relevant time period as "from June 19, 2021 to the present," a span exceeding four and a half years. Atallah Decl., Ex. A at 4, Ex. B at 4. Yet, Plaintiff's own claims arise from an extraordinarily narrow window, as she alleges that she registered her telephone number with the DNC Registry on March 27, 2025, and the Class Definition requires that a person's number be registered on the DNC Registry "for at least thirty days" before receiving the relevant messages. Compl. ¶¶ 12, 22. Thus, under Plaintiff's own theory and Class Definition, the earliest date on which she could have a viable claim is April 26, 2025.

Further, Plaintiff alleges that she received text messages from Crumbl in "April, May, and June 2025." Compl. ¶ 13. Accordingly, the relevant period for Plaintiff's individual claims is, at most, approximately three months. Yet the

16

Subpoenas demand over four and a half years of data, dating back to June 19, 2021. This represents a period of forty-five months *predating* Plaintiff's registration on the DNC Registry, a time span about *eighteen times broader* than necessary to address Plaintiff's allegations, and which runs afoul of reasonable breadth. *See E.E.O.C. v. St. John Hosp. & Med. Ctr.*, 2012 WL 3887626, at *8 (E.D. Mich. June 1, 2012), *R&R adopted*, 2012 WL 3888072 (E.D. Mich. Sept. 7, 2012) (reducing subpoena's relevant time period from four years to two); *see also Tyree v. Seven Hills Anaesthesia LLC*, 2025 WL 1993529, at *3 (S.D. Ohio July 17, 2025) (lowering subpoena's time period from two years to more relevant one month); *see also Ligas v. Maram*, 2007 WL 4225459, at *5 (N.D. Ill. Nov. 27, 2007) (rejecting attempted expansion of RTP in subpoena from three years to five years).

Plaintiff may argue that the four-year lookback period in the Subpoenas corresponds to the four-year limitations period referenced in the class definition. Compl. ¶ 22. But this argument ignores the interplay between the temporal limitation and the DNC Registry requirement. Under the class definition, a person can only be a class member if their telephone number had been registered with the DNC Registry for at least thirty days before Crumbl delivered, or caused to be delivered, at least two voice messages or text messages within the 12-month period. *Id.* Therefore, for any potential class member, the relevant inquiry is not simply whether they received text messages at some point during the four-year period, but rather whether they

17

received text messages *after* their number had been registered on the DNC Registry for at least thirty days.

The Subpoenas do not account for this limitation, and Plaintiff has not justified the need for four years of data on text messages sent before any particular recipient registered their number on the DNC Registry. Moreover, such overbreadth creates a substantial risk of unnecessary disclosure of sensitive and protected consumer PII and may be used to facilitate inquiries far beyond the claims at issue, effectively permitting Plaintiff's counsel to "go fishing" for new grievances within and outside of the instant litigation. Given this overbreadth, there is good cause to quash the subpoenas in their entirety or, alternatively, to issue a protective order.

**6.      The Subpoenas Impose an Undue Burden on the Third Parties**

Rule 45(d)(1) requires parties serving a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." "Undue burden is to be assessed in a case-specific manner considering 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *In re: Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (quoting *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)). "Courts must 'balance the need for discovery against the burden imposed on the person ordered to produce documents,' and the status of

18

that person as a non-party is a factor." *Id*. Plaintiff has not taken remotely reasonable steps to avoid said burden, instead serving expansive Subpoenas demanding nine categories of documents over four years and seventeen topics of deposition testimony from two non-parties. Such overbreadth imposes an undue burden.

Here, the balance tips decisively in favor of the non-parties. Plaintiff seeks to impose significant burdens on them to produce voluminous information that is largely irrelevant to her claims. Indeed, Bandwidth has objected to its Subpoena on these exact grounds, asserting that it is "unduly burdensome." Atallah Decl., Ex. C at 1. Given this undue burden, the Court should quash the Subpoenas, or issue a protective order in the alternative.

**B.  Plaintiff Does Not Need the Subpoenaed Data to Seek Class Certification**

A plaintiff seeking precertification discovery "bears the burden of advancing a prima facie showing that the class action requirements of [Rule] 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *Peterson v. Medtronic, Inc.*, 2018 WL 11240431, at *7 (W.D. Tenn. May 10, 2018) (quoting *Mantolete v. Bolger*, 767 F.2d 1416, 1424–25 (9th Cir. 1985)). Although precertification discovery must be broad enough to afford plaintiffs a realistic opportunity to satisfy Rule 23, it must also protect against discovery that is unduly burdensome, irrelevant, or invasive of confidential matters. *Nash v. City of*

19

*Oakwood*, 90 F.R.D. 633, 636 (S.D. Ohio 1981) (quoting *Nat'l Org. for Women v. Sperry Rand*, 88 F.R.D. 272, 277 (D. Conn. 1980)). As *Nash* recognized, "[d]iscovery is not to be used as a weapon," and "[u]nnecessarily broad discovery will not benefit either party." *Id.*

Because Plaintiff seeks statutory and treble damages, she must satisfy Rule 23(b)(3)'s requirements of predominance, superiority, and ascertainability in addition to Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy. *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017)). Measured against those standards, the Subpoenas are plainly disproportionate, as Plaintiff cannot show that mass production of the requested consumer data is necessary to satisfy the Rule 23 requirements.

### i. Rule 23(a) Factors Do Not Support Disclosure of the Data Sought

Plaintiff does not need the subpoenaed data to establish typicality, commonality, or numerosity. Typicality requires that the named plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members" and is "based on the same legal theory." *In re Flint Water Cases*, No. 5:16-cv-10444, ECF No. 1933, at 87 (E.D. Mich. Aug. 11, 2021) (Levy, J.) (attached as Ex. 1) (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007)). Under Plaintiff's theory of liability, she possesses the relevant information: her own text-message records, the date her number was reassigned, and

20

evidence of her own DNC registration. She does not need personal records of millions of other consumers to argue that her claim arises from the same alleged course of conduct or rests on the same legal theory as putative class members.

The same is true for commonality, which turns on whether there is "a common question that will yield a common answer for the class" and that "relates to the actual theory of liability in the case." *Id.* at 85–86 (quotation omitted); *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505–06 (6th Cir. 2015)). As for numerosity, Crumbl has agreed to stipulate that this requirement is met for purposes of class certification.

### ii. Rule 23(b)(3) Further Confirms That Disclosure of the Requested Data Is Unwarranted

Rule 23(b)(3)'s requirements confirm that the subpoenaed data is unnecessary. A proposed class must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class" using "objective criteria." *Barry v. Corrigan*, No. 13-cv-13185, ECF No. 91, at 27 (E.D. Mich. Jan. 9, 2015) (Levy, J.) (attached as Ex. 2) (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537–38 (6th Cir. 2012)). Class members must also be "capable of specific enumeration." *In re Flint Water Cases* at 117 (citing *Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016)). As discussed in Section III.A.4, however, Plaintiff's proposed class definition requires a multi-step, individualized analysis for each telephone number.

That inquiry cannot be resolved by reference to a single database or other straightforward objective criterion. To the extent Plaintiff contends that she needs this mass data production so that a yet to be identified expert can attempt to identify class members through a currently undefined methodology, that contention only confirms Crumbl's point: the Subpoenas exceed the bounds of proportionate precertification discovery.

Predominance presents the same problem. "[S]ubstantial, individual inquiries to determine liability under [a plaintiff's] theory of the case and class definition are incompatible with the predominance requirement of Rule 23(b)(3)." *In re Flint Water Cases*, ECF No. 1933, at 104 (quoting *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 354 (6th Cir. 2011)). Courts must also account for individualized affirmative defenses that may "affect[] the individuals in different ways." *Id.* (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 844 n.20 (1999)). Here, Crumbl's affirmative defenses, including consent, established business relationship, and its terms and conditions, would require individualized inquiries into each putative class member's relationship with Crumbl such that the production of millions of consumer records would not materially advance the Rule 23 inquiry at this stage, but would instead generate *more* individualized issues.

More fundamentally, the Subpoenas are improper at the precertification stage because they are not sufficiently tailored to the certification inquiry. Courts in this

22

Circuit have repeatedly denied precertification discovery requests that seek broad individualized data untethered to Rule 23. In *Moore v. Westgate Resorts, Ltd.*, for example, the court denied requests for individualized data concerning more than 73,000 putative class members as "not proportional prior to a motion for class certification," explaining that the requests would "constitute an individualized inquiry into all potential claims" and were directed to the merits rather than the Rule 23 analysis. 2020 WL 127828, at *6–7 (E.D. Tenn. Jan. 9, 2020); *see also In re Skelaxin (Metaxalone) Antitrust Litigation*, 292 F.R.D. 544, 549–50 (E.D. Tenn. 2013) (granting protective orders against subpoenas served on absent class members); *Peterson*, 2018 WL 11240431, at *7 (holding that requests for contact information and data concerning all putative class members were "overbroad" and "premature" where unlikely to substantiate the class allegations.)

Similarly, Plaintiff has not tailored her requests to seek information genuinely necessary for class certification. Instead, she seeks disclosure of the telephone records of millions of consumers, including many who, by definition, fall outside the proposed class, at a substantial burden to Crumbl, Braze, and Bandwidth and in violation of the privacy rights of consumers. This is precisely the type of disproportionate precertification discovery that courts in this Circuit have deemed excessive, and the Court should not permit it here.

23

### C. The Court May Instead Issue a Protective Order

Crumbl respectfully requests that, if it does not quash the Subpoenas, this Court modify the Subpoenas to bar production of customer PII and confidential commercial information and bring the subpoenas more closely to the scope of appropriate discovery. *See, e.g.*, *Viet. Veterans of Am. v. C.I.A.*, 2011 WL 4714000, at *1 (S.D. Ohio Oct. 6, 2011). The Court could, for example:

(1) Specifically limit production only to information for individuals who could realistically fall within the class definition (i.e., persons who did not provide their telephone numbers to Crumbl), to the extent Plaintiff is able to demonstrate a reliable methodology for Braze and Bandwidth to use in determining who would fall into that category;

(2) Narrow the document requests to eliminate the production of individual customer records and permit only the production of aggregated data, thereby safeguarding individual PII for Crumbl's customers;

(3) Narrow the time period covered by the Subpoenas to correspond to the relevant period under the Class Definition (*i.e.*, text messages sent to numbers registered on the DNC Registry for at least thirty days); and

(4) Require Plaintiff to pursue class certification through an alternative class determination methodology that does not necessitate mass production of individualized consumer records from non-parties.

## IV. CONCLUSION

For the foregoing reasons, Crumbl respectfully requests that this Court grant its Motion to Quash, or in the alternative, issue a protective order limiting the scope of the Subpoenas to the Third Parties.

24

Dated: June 18, 2026                      Respectfully submitted,

                                          **FOLEY & LARDNER LLP**

                                          */s/ John J. Atallah*
                                          John J. Atallah
                                          Foley & Lardner LLP
                                          555 S. Flower Street, Suite 3300
                                          Los Angeles, CA  90071-2418
                                          213.972.4834
                                          jatallah@foley.com

                                          *Counsel for Defendant*

25