**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Victoria Soboleski,

                    Plaintiff,        Case No: 5:25-cv-11839-JEL-DRG

   v.                     Judith E. Levy
                           United States District Judge

Crumble LLC,

                            Mag. Judge: David R. Grand
              Defendant.

_____/

### REPLY BRIEF IN SUPPORT OF DEFENDANT CRUMBL LLC'S MOTION TO QUASH PLAINTIFF'S THIRD-PARTY SUBPOENAS

Plaintiff's opposition confirms the critical problem with her Subpoenas: she seeks the wholesale production of a large volume of sensitive, protected non-party consumer data so her counsel and expert can scour these records to determine whether a narrow subset *might* fit her proposed class definition. Contrary to Plaintiff's arguments, the Subpoenas are not limited requests for "text message records." They seek telephone-number information across overlapping categories, all "STOP" or Do Not Call requests, communications between the Third Parties and Crumbl relating to this Action, testimony about every communication between Plaintiff and the Third Parties regardless of topic, names associated with telephone numbers, written agreements between Crumbl and the Third Parties, and information about the Third Parties' hardware, software, and systems. Atallah Decl., Dkt. 20-1 at 4-7, Dkt. 20-2 at 4-7.

1

Plaintiff confirms she intends to use the Subpoenas as only a "starting dataset." Opp. at 2-3, 9-13. But she has not shown that wholesale disclosure of protected non-party, ***non-class member***, consumer information is necessary and proportional to the needs of the case—particularly because Crumbl has stipulated to numerosity. The Court should grant Crumbl's Motion and quash the Subpoenas, or alternatively, enter a protective order barring production of personally identifiable information ("PII") and/or substantially narrowing the scope of the Subpoenas.

## I.   PLAINTIFF MISCHARACTERIZES THE SUBPOENAS' SCOPE

Plaintiff mischaracterizes the Subpoenas as if they seek only innocuous TCPA "call and text message records." Opp. at 1, 6-8. Their reach is far broader. As explained in Defendant's papers, that reach spans nine document categories and seventeen deposition topics over more than four years. Atallah Decl., Dkt. 20-1 at 4-7, Dkt. 20-2 at 4-7. Plaintiff's attempt to recast these requests as a simple demand for text-message records obscures the breadth of the Subpoenas she actually served. The Subpoenas are not tailored to identifying putative class members, but instead seek the PII of a large number of consumers (the vast majority of whom ***cannot*** be members of the putative class), STOP records, vendor agreements, proprietary systems information, and litigation-related communications—much of it wholly irrelevant to the claims and defenses, and all of it burdensome to non-parties.

2

## II.   PLAINTIFF HAS NOT SHOWN THAT SHE NEEDS THE REQUESTED DATA TO SEEK CLASS CERTIFICATION

Plaintiff's principal response to Crumbl's Motion is that she needs the "complete dataset" so her expert can filter it against the National Do Not Call Registry, the Reassigned Numbers Database, and Crumbl's records. Opp. at 2, 9-13. That argument incorrectly assumes the conclusion. Plaintiff must first show that discovery is relevant and proportional, and cannot do so by merely saying her expert would prefer to begin with everything and narrow from there.

Plaintiff is not entitled to unlimited precertification discovery simply because a plaintiff calls it "class data," and instead she must show that the requested information is necessary to satisfy Rule 23 and substantiate the class allegations. *Peterson v. Medtronic, Inc.*, 2018 WL 11240431, at *7 (W.D. Tenn. May 10, 2018). Precertification discovery must be balanced against undue burden, irrelevance, and invasion of confidential matters—especially where a plaintiff seeks protected third-party information identifying individuals, the vast majority of who are ***not*** putative class members. *See Nash v. City of Oakwood*, 90 F.R.D. 633, 636 (S.D. Ohio 1981); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 292 F.R.D. 544, 549-50 (E.D. Tenn. 2013); *Buncombe County v. United Healthcare Ins. Co.*, 2026 WL 1122126, at *4 (E.D. Tenn. Apr. 24, 2026) (denying motion to compel third-party subpoena seeking class-member identifying information for ascertainability). Plaintiff's response

demonstrates that she has not even come close to meeting this standard and *her burden* in seeking broad categories of PII.

Crumbl has already offered to stipulate to numerosity for purposes of class certification, obviating any need to obtain the information sought for purposes of establishing this Rule 23 element. Typicality and commonality turn on Plaintiff's own records and liability theory—not absent consumers' personal information. Further, predominance requires class-wide proof and therefore does not justify broad, individualized third-party discovery of absent consumers' protected PII. *Martin v. Behr Dayton Thermal Products LLC*, 896 F.3d 405, 412 (6th Cir. 2018) ("[A] common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof."). Plaintiff fails to rebut these points, or even more basically, to credibly explain how she intends to use this information to satisfy predominance or any other disputed Rule 23 requirement. At its core, Plaintiff cannot justify the disclosure of protected PII, including names, telephone numbers, and communication logs, for consumers who are by definition *excluded* from Plaintiff's proposed class definition because they voluntarily provided their phone numbers to Crumbl and affirmatively opted in to receive text messages.

Plaintiff's expert declaration only illustrates the overbreadth and disproportionality of her requests. In his demonstration, Mr. Woolfson began with

4

more than 44 million consumer records and ultimately identified only 5,626 *potentially* relevant telephone numbers (0.0128% of the overall data set). Woolfson Decl. ¶¶ 31-36. That "produce everything, filter later" approach is precisely why the Court should reject Plaintiff's proposed approach. *See Buncombe County*, 2026 WL 1122126, at *3-5 (denying motion to compel third-party subpoena response where movant failed to explain why customer data was necessary at precertification stage).

### III. THE STIPULATED PROTECTIVE ORDER DOES NOT ELIMINATE THE PRIVACY HARM

Plaintiff incorrectly argues any privacy concerns are "fully addressed" by the Stipulated Protective Order. Opp. at 3, 15-16. The Subpoenas seek PII from non-parties who have *not* consented to disclosure and who, in most instances, are excluded from the class definition because they voluntarily provided their numbers to Crumbl. The harm is the compelled, unauthorized disclosure of non-party consumers' PII to Plaintiff. The Stipulated Protective Order reduces the risk of public dissemination but does *not* address the harm to absent consumers of unauthorized disclosure of their protected PII to Plaintiff. *See Mann v. Univ. of Cincinnati*, 824 F. Supp. 1190, 1205 (S.D. Ohio 1993) (quashing subpoena and holding that disclosure of private records to counsel constitutes cognizable harm warranting protective relief even absent public dissemination).

## IV.   THE SUBPOENAS ARE OVERBROAD AND SUBSTANTIALLY BURDEN THIRD PARTIES

As detailed in Defendant's moving papers, the length of the limitations period says nothing about which text messages within that period are relevant to the Class Definition—which requires that a class member's number have been registered on the DNC Registry for at least thirty days before Crumbl delivered two or more messages within a twelve-month period. Compl. ¶ 22. Plaintiff's Opposition does not address this mismatch and, instead, merely concludes that the four-year lookback is proper because of the TCPA's four-year statute of limitations. (Opp. at 17.) She does not identify any provision of the Subpoenas that ties production to a recipient's individual DNC-registration date, nor explain why messages sent before a given recipient's thirty-day registration window—necessarily excluded from the Class Definition—should be produced at all. Because the Subpoenas make no effort to align their temporal scope with the DNC-registration requirement that actually defines the class, they remain overbroad and should be narrowed or quashed.

Moreover, Plaintiff is incorrect that the undue-burden objection is unsupported given that undue burden is assessed by reference to "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described[,] and the burden imposed." *In re: Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (quotation omitted). Measured against those factors, the Subpoenas are

6

disproportionate—identifying seventeen deposition topics and nine document categories spanning more than four years. *In re CareSource Mgmt. Grp. Co.*, 289 F.R.D. 251, 253-54 (S.D. Ohio 2013) (quashing subpoena for undue burden where requesting party failed to justify scope). Bandwidth's own objection letter corroborates this burden, explaining that the Subpoena is vague, duplicative of party discovery, and potentially directed to inaccessible legacy systems. Atallah Decl., Dkt. 20-3, Objection Letter at 2-4.

## V.   CONCLUSION

Crumbl respectfully requests that this Court grant its Motion to Quash, or in the alternative, issue a protective order limiting the scope of the Subpoenas.

Dated: July 14, 2026                          Respectfully submitted,

**FOLEY & LARDNER LLP**

*/s/ John J. Atallah*
John J. Atallah
Foley & Lardner LLP
555 S. Flower Street, Suite 3300
Los Angeles, CA  90071-2418
213.972.4834
jatallah@foley.com

*Counsel for Defendant*

7