**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Victoria Soboleski,

Plaintiff,

v.

Crumble LLC,

Defendant.

Case No: 5:25-cv-11839-JEL-DRG

Judith E. Levy
United States District Judge

Mag. Judge: David R. Grand

_______________________________________/

# DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant Crumbl, LLC ("Crumbl"), erroneously sued as "Crumble LLC," hereby respectfully moves this Court to enter judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

The Motion should be granted because Plaintiff's sole claim under Section 227(c)(5) of the TCPA fails as a matter of law. That provision creates a private right of action only for unwanted "telephone calls," and the plain meaning of that term refers to real-time, voice-based communication—not written text messages. The larger statutory structure confirms this reading: Congress used the broader phrase "telephone solicitation" (defined to include a "call or message") in surrounding provisions of the TCPA, but deliberately chose the narrower term "telephone call" for the private remedy. Because Plaintiff's Complaint alleges only her receipt of text messages, her claim fails as a matter of law.

Pursuant to Local Rule 7.1(a), counsel for Crumbl conferred with counsel for Plaintiff by email on August 18 and August 19, 2026 to explain the nature of the motion and its legal basis, and to invite a meet and confer call. Counsel for Plaintiff responded by email on August 18 to indicate Plaintiff's opposition to Crumbl's Motion and has not provided any available times for a meet and confer call. The parties were unable to reach an agreement that would avoid the need for this Motion.

Crumbl respectfully requests that the Court schedule a hearing for oral argument on this Motion.

WHEREFORE, for these reasons, and for the reasons set forth in the concurrently filed Brief in Support, Crumbl respectfully requests that the Court grant this Motion and dismiss Plaintiff's Complaint, with prejudice.

Dated: August 20, 2026

Respectfully submitted,

**FOLEY & LARDNER LLP**

*/s/ John J. Atallah*

John J. Atallah
Foley & Lardner LLP
555 S. Flower Street, Suite 3300
Los Angeles, CA 90071-2418
213.972.4834
jatallah@foley.com

*Counsel for Defendant*

## TABLE OF CONTENTS


I. INTRODUCTION ........................................................................ 1

II. FACTUAL BACKGROUND ................................................................ 4

III. LEGAL STANDARD ...................................................................... 5

IV. ARGUMENT ................................................................................ 6

A. Statutory and Regulatory Background ........................................ 8

B. Section 227(c)(5) Does Not Create a Private Right of Action for Text Messages ........................................................................ 9

1. The Plain Text of the Statute Does Not Encompass Text Messages. ................................................................ 10

2. “Telephone Call” in 1991 Meant a Voice Communication, Not a Text Message ........................................ 11

3. The Statutory Structure Confirms Congress Intended a Narrower Remedy. .................................................... 13

C. The FCC’s Prior Interpretations of the TCPA Cannot Salvage Plaintiff’s Claim ........................................................................ 16

1. The FCC’s Orders Do Not Address § 227(c)(5)’s Private Right of Action ...................................................... 16

2. The FCC’s Interpretation Is Not Entitled to Deference. ........... 18

3. Congressional Silence Does Not Constitute Ratification. ........ 19

D. Policy Arguments Cannot Override the Plain Language of the Statute ................................................................................ 21

V. CONCLUSION ............................................................................ 23

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Alexander v. Sandoval*,
532 U.S. 275 (2001) .......... 10, 18, 19

*Amini v. Oberlin Coll.*,
259 F.3d 493 (6th Cir. 2001) .......... 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 6

*Bates v. Green Farms Condo. Ass'n*,
958 F.3d 470 (6th Cir. 2020) .......... 6

*Blow v. Bijora, Inc.*,
191 F. Supp. 3d 780 (N.D. Ill. 2016) .......... 12

*D'Ambrosio v. Marino*,
747 F.3d 378 (6th Cir. 2014) .......... 6

*Davis v. CVS Pharmacy, Inc.*,
797 F. Supp. 3d 1270 (N.D. Fla. 2025) .......... 3, 12, 13, 21

*Delaware v. Pennsylvania*,
598 U.S. 115 (2023) .......... 11

*Dep't of Homeland Sec. v. MacLean*,
574 U.S. 383 (2015) .......... 20

*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021) .......... 21

*Irvin v. Sonic Indus. Servs., LLC*,
2026 WL 1098403 (N.D. Ga. Apr. 20, 2026) .......... 3

*James v. Smarter Contact, Inc.*,
828 F. Supp. 3d 1367 (M.D. Fla. Mar. 31, 2026) .......... 3

*Jones v. Blackstone Med. Servs., LLC*,
792 F. Supp. 3d 894 (C.D. Ill. 2025) .......... 3, 22

*Keating v. Peterson's Nelnet, LLC*,
615 F. App'x 365 (6th Cir. 2015) .......... 9

*LaGuardia v. Designer Brands Inc.*,
2020 WL 6280910 (S.D. Ohio Oct. 27, 2020) .......... 9

*Lamie v. U.S. Tr.*,
540 U.S. 526 (2004) .......... 10

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024) .......... 7, 11, 18

*Lopresti v. Nouveau Essentials Mtkg. LLC*,
2026 WL 964758 (M.D. Fla. Feb. 26, 2026) .......... 3

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
606 U.S. 146 (2025) .......... 1, 7, 18

*Metris-Shamoon v. City of Detroit*,
545 F. Supp. 3d 506 (E.D. Mich. 2021) .......... 6

*Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*,
472 U.S. 237 (1985) .......... 15

*Radvansky v. 1-800-Flowers.com, Inc.*,
2026 WL 456919 (N.D. Ga. Feb. 17, 2026) .......... 3

*Richards v. Fashion Nova, LLC,*
2026 WL 847568 (S.D. Ind. Mar. 26, 2026) .......... 3

*Richards v. Shein Distribution Corp.*,
2026 WL 847584 (S.D. Ind. Mar. 26, 2026) .......... 3

*Sayed v. Naturopathica Holistic Health, Inc.,*
2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) .......... 3

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944) .......... 18

*Steidinger v. Blackstone Med. Servs.*,
182 F.4th 532 (7th Cir. 2026) ........................................................ *passim*

*Stockdale v. Skymount Property Group, LLC*,
825 F.Supp.3d 622 (N.D. Ohio 2026) ........................................ 2, 11, 12, 15, 22

*Tomaszczuk v. Whitaker*,
909 F.3d 159 (6th Cir. 2018) ........................................................................13

*Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*,
615 F.3d 622 (6th Cir. 2010) ..........................................................................6

*Trim v. Reward Zone USA LLC*,
76 F.4th 1157 (9th Cir. 2023) .......................................................................15

*Wisconsin Central Ltd. v. United States*,
585 U.S. 274 (2018) .....................................................................................11

*Ziegler v. IBP Hog Mkt., Inc.*,
249 F.3d 509 (6th Cir. 2001) ..........................................................................6

**Federal Statutes**

47 U.S.C. § 227 ........................................................................................ *passim*

Pub. L. No. 102-243, § 2, 105 Stat. 2394, 2394 ..................................................22

Consolidated Appropriations Act, Pub. L. No. 115-141, 132 Stat. 348 . 2, 15, 19, 20

**Federal Rules**

Rule 12 ..................................................................................................5, 6

**Federal Regulations**

*In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,
38 F.C.C. Rcd. 12247 (2023) ....................................................................9, 19

*In Re Rules and Regulations Implementing the TCPA of 1991*,
18 FCC Rcd. 14014 (2003) .......................................................................9, 17

*Notice of Proposed Rulemaking*,
17 FCC Rcd 17459 (2002) ..............................................................................8

47 C.F.R. § 64.1200 ........................................................................................ *passim*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Victoria Soboleski,

Plaintiff,

v.

Crumble LLC,

Defendant.

Case No: 5:25-cv-11839-JEL-DRG

Judith E. Levy
United States District Judge

Mag. Judge: David R. Grand

/

**BRIEF IN SUPPORT OF CRUMBL, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS**

## I. INTRODUCTION

Plaintiff's entire complaint for violation of the Telephone Consumer Protection Act ("TCPA") is premised on the allegation that Crumbl sent more than one text message to her phone number. However, text messages are not "telephone calls" and are therefore not actionable under the TCPA's private right of action provision. *See* 47 U.S.C. § 227(c)(5). While courts have previously assumed that text messages are actionable based on FCC interpretive guidance, courts can no longer simply defer to the FCC and must independently consider whether the statutory term "telephone call" encompasses text messages. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 168 (2025) (holding that district courts are "not bound by the FCC's interpretation of the TCPA" and instead "should interpret the statute as courts traditionally do under ordinary

principles of statutory interpretation"). Absent *Chevron* deference, the argument in favor of treating text messages as "telephone calls" collapses on multiple grounds.

**First**, text messages did not exist in 1991 when the TCPA was enacted, and the terms "call" and "text" refer to two distinct types of communication. *See Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532, 536 (7th Cir. 2026) (explaining that the 1991 dictionary definition of "telephone call" referenced a communication by sound). **Second**, the broader statutory structure confirms that Section 47 U.S.C. § 227(c)(5)'s reference to "telephone calls" refers to a narrower subset of communications compared to other provisions that employ the broader term "telephone solicitation." **Lastly**, Congress has amended the TCPA five times but repeatedly declined to expand the TCPA's private right of action to cover text messages despite having expressly done so for other provisions of the TCPA. *See, e.g.*, Consolidated Appropriations Act of 2018, § 503(a), § 227(e)(1), (e)(8), 132 Stat. 348, 1091-92 (2018) (amending § 227(e) to cover text messages and defining "text message" for purposes of that subsection).

A large and growing number of United States district courts have adopted this common sense reading of Section 47 U.S.C. § 227(c)(5), holding as a matter of law that plaintiffs cannot pursue claims under Section 47 U.S.C. § 227(c)(5) based on unwanted text messages. *Stockdale v. Skymount Property Group, LLC*, 825 F.Supp.3d 622, 624 (N.D. Ohio 2026) (holding that § 227(c)(5) does not encompass

text messages, and noting lack of controlling Sixth Circuit authority post-*McLaughlin*); *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 898-902 (C.D. Ill. 2025) ("[U]nder a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages."); *see also Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1275-76 (N.D. Fla. 2025); *Irvin v. Sonic Indus. Servs., LLC*, 2026 WL 1098403, at *3-5 (N.D. Ga. Apr. 20, 2026); *James v. Smarter Contact, Inc.*, 828 F. Supp. 3d 1367, 1370-73 (M.D. Fla. Mar. 31, 2026); *Richards v. Shein Distribution Corp.*, 2026 WL 847584, at *2 (S.D. Ind. Mar. 26, 2026); *Richards v. Fashion Nova, LLC,* 2026 WL 847568, at *5 (S.D. Ind. Mar. 26, 2026); *Lopresti v. Nouveau Essentials Mtkg. LLC*, 2026 WL 964758, at *5-6 (M.D. Fla. Feb. 26, 2026) (granting motion for judgment on the pleadings); *Radvansky v. 1-800-Flowers.com, Inc.*, 2026 WL 456919, at *4-5 (N.D. Ga. Feb. 17, 2026); *Sayed v. Naturopathica Holistic Health, Inc.,* 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025).

This chorus of district courts was recently joined by the Seventh Circuit in *Steidinger*—the first post-*McLaughlin* appellate decision to consider text messages under § 227(c)(5)—where the court of appeals affirmed dismissal of TCPA claims after concluding that text messages "do not fall within the private right of action created by [the TCPA.]" 182 F.4th at 540. This conclusion is mandated by the plain text of the TCPA and the Court should therefore grant this Motion and enter judgment in Crumbl's favor.

## II. FACTUAL BACKGROUND

Plaintiff Victoria Soboleski filed this putative class action against Crumbl under the Telephone Consumer Protection Act, 47 U.S.C. § 227. Her Complaint asserts a single cause of action under § 227(c)(5), based on the Federal Communications Commission's ("FCC") National Do-Not-Call Registry regulation, 47 C.F.R. § 64.1200(c). Plaintiff alleges that Crumbl delivered, or caused to be delivered, more than one marketing communication to her telephone number after she registered it on the Registry. Compl. ¶¶ 12-13, 15.

The Complaint alleges that Plaintiff registered the telephone number (586) 420-5289 on the National Do-Not-Call Registry on March 27, 2025. *Id.* ¶ 12. It then alleges that Crumbl delivered, or caused to be delivered, text messages to that number in April, May, and June 2025. *Id.* ¶ 13. Plaintiff characterizes the messages as advertisements or marketing communications promoting Crumbl's products, application, rewards program, and seasonal offerings. *Id.* ¶¶ 14, 17. Nowhere in the Complaint does Plaintiff allege that she attempted to opt out of receiving further text messages (for example, by texting "STOP" in response), and her choice instead to sue at least nine other companies on the exact same theory speaks volumes about the legitimacy of her claims. *See, e.g., Soboleski v. Michael Kors (USA), Inc.f*, No. 2:25-cv-11838 (E.D. Mich. June 19, 2025); *Soboleski v. TerrAscend Corp.*, No. 4:25-cv-

11763 (E.D. Mich. June 19, 2025); *Soboleski v. MCM Products USA Inc.*, No. 2:25-cv-11699 (E.D. Mich. June 8, 2025).

The communications reflected in the screenshots submitted with Plaintiff's Complaint are identified exclusively as text messages. The screenshots show SMS marketing messages from short code 278625, including messages advertising cookies, the Crumbl application, rewards, and limited-time offerings. Compl. ¶ 14. The screenshots do not depict or describe a voice call, voicemail, or other voice communication.

The Complaint's class definition refers generally to persons who received more than one "voice message or text message" promoting Crumbl's goods or services. Compl. ¶ 22. But Plaintiff's individual allegations—the allegations that establish her standing and her claim—concern only text messages. The Complaint's Count I confirms the point: Plaintiff invokes § 227(c)(5), alleges that Crumbl violated 47 C.F.R. § 64.1200(c), and repeatedly describes the alleged violations as the delivery of solicitation text messages. Compl. ¶¶ 50–58. Thus, even accepting every factual allegation as true, this Motion presents a single legal question: does section 227(c)(5)'s reference to "telephone calls" encompass text messages?

## III. LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment after the pleadings are closed. In the Sixth Circuit, a motion for

judgment on the pleadings generally follows the same rules as a motion to dismiss under Rule 12(b)(6). *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)); *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001). The Court reviews the legal sufficiency of the pleadings *de novo*.

Judgment on the pleadings is appropriate when the plaintiff fails to allege enough facts to state a claim for relief that is plausible on its face. *Metris-Shamoon v. City of Detroit*, 545 F. Supp. 3d 506, 514 (E.D. Mich. 2021) (quoting *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010)). The Court accepts well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor, but it need not accept legal conclusions couched as factual allegations. *Bates*, 958 F.3d at 480 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In assessing the plausibility of allegations on a motion for judgment on the pleadings, the Court may consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint. *Metris-Shamoon*, 545 F. Supp. 3d at 514 (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

## IV. ARGUMENT

Section 227(c)(5) of the TCPA creates a private right of action for persons who receive more than one unwanted "telephone call" within a twelve-month period.

The pleadings here confirm that the communications at issue were text messages, such that the present Motion boils down to a pure statutory interpretation question of whether text messages are "telephone calls" for purposes of TCPA's private right of action. The statute does not mention text messages, and the phrase "telephone call" does not encompass them, warranting dismissal. Three independent lines of analysis compel that conclusion:

**First**, the ordinary public meaning of "telephone call" when Congress enacted the TCPA in 1991 referred to sound-based, real-time voice communication—not to written electronic messages transmitted via SMS, a technology that did not even exist until 1992. **Second**, the statutory structure confirms the limitation: Congress used the broader phrase "telephone solicitation"—expressly defined to include "a telephone call or message"—in surrounding provisions of § 227(c), but deliberately chose the narrower phrase "telephone call" when it defined the private right of action in § 227(c)(5). **Third**, the FCC's prior interpretation treating text messages as "calls" cannot save Plaintiff's claim. That guidance addressed § 227(b)'s automated-call restrictions—not § 227(c)(5)'s private right of action—and in any event is entitled to no deference following the Supreme Court's decisions in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), and *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025). Because Plaintiff's claim

is based solely on her alleged receipt of text messages, she lacks a private right of action under the TCPA and her claim fails as a matter of law.

### A. Statutory and Regulatory Background

Section 227(c) addresses the National Do-Not-Call Registry and related restrictions on telephone solicitations. It directs the FCC to develop regulations protecting residential telephone subscribers' privacy rights, to establish a national database of subscribers who object to receiving telephone solicitations, and to prescribe rules governing the use of that database. 47 U.S.C. § 227(c)(1), (3). Congress separately created a private remedy in § 227(c)(5). That subsection provides that a person who "has received more than one ***telephone call*** within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring an action for statutory damages and other relief. 47 U.S.C. § 227(c)(5) (emphasis added). The private remedy is therefore tied to the specific communications Congress referred to as "telephone call[s]."

In 2002, the FCC issued a Notice of Proposed Rulemaking regarding its desire to update the TCPA to account for "[n]ew technologies" that emerged since the TCPA's enactment. *See Notice of Proposed Rulemaking*, 17 FCC Rcd 17459 (2002). Then, in 2003, the FCC proclaimed the term "call" under the TCPA "encompasses

both voice calls and text calls."[1] *In Re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, 14115 (2003) ("2003 Order"). Critically, it bears noting the FCC was only interpreting the term "call" as used in 47 U.S.C. § 227(b), and not the term "telephone call" as used in 47 U.S.C. § 227(c). The FCC identified no statutory basis or authority for concluding that a text message was a "call." *See id.* Rather, the FCC believed it could make such a decree because it viewed it as consistent with the goals of the statute. *See id.*

In response, courts fell in line, one by one, on the assumption that they were obligated to defer to FCC edicts. *See, e.g.*, *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015) ("[B]ecause Congress could not have addressed the relevant issue [of the treatment of text messages] upon passage of the TCPA, we must defer to the reasonable interpretation of the Act offered by the FCC in its 2003 guidance."); *LaGuardia v. Designer Brands Inc.*, 2020 WL 6280910, at *8 (S.D. Ohio Oct. 27, 2020).

### B. Section 227(c)(5) Does Not Create a Private Right of Action for Text Messages

This case should be disposed of based on the plain text of the TCPA. Section 227(c)(5) does not provide a private action for every unwanted communication

[1] The FCC did not attempt to expand Subsection 227(c)(5) to encompass text messages until 2023. *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 38 F.C.C. Rcd. 12247, 12256-57 (2023) [hereinafter the "2023 Order"].

delivered to a telephone number. It only provides a cause of action for a person who received more than one "telephone call" within twelve months in violation of regulations prescribed under § 227(c). Plaintiff received only text messages, and text messages are not referenced in § 227(c)(5). With the elimination of *Chevron* deference as a hurdle to interpreting the TCPA, the issue for the Court now is a straightforward matter of statutory interpretation: whether a text message is a "telephone call" under Section 227(c)(5). The answer to this question is a straightforward "no," and Plaintiff's claim therefore fails as a matter of law.

1. The Plain Text of the Statute Does Not Encompass Text Messages.

It is axiomatic that "[w]e should prefer the plain meaning since that approach respects the words of Congress." *Lamie v. U.S. Tr.*, 540 U.S. 526, 536 (2004). Section 227(c)(5) uses the words "telephone call." It does not use "telephone communication," "electronic communication," "message," "text message," "SMS," or any other technology-neutral phrase. The Court must give effect to the words ***Congress*** enacted, not substitute a broader phrase that Congress could have chosen but did not. That limitation is critical because a private right of action to enforce federal law must be created by Congress, not by an agency. *Alexander v. Sandoval*, 532 U.S. 275, 286, 291 (2001). The Court therefore cannot enlarge the TCPA's remedial provision by reading "call" to mean "telephone call ***or message***" simply

because the FCC has done so in other contexts outside the provision of the TCPA at issue in this case.

The result follows even assuming the truth of Plaintiff's allegations that the text messages were commercial solicitations that violated § 64.1200(c). Section 227(c)(5) requires both a regulatory violation and receipt of the specified communication (i.e., a "telephone call"). Here, Plaintiff does not allege that she received any unwanted calls from Crumbl, meaning she cannot plausibly allege a violation of the TCPA based on Crumbl's alleged conduct.

2. <u>"Telephone Call" in 1991 Meant a Voice Communication, Not a Text Message.</u>

*Loper Bright* confirms that "[e]very statute's meaning is fixed at the time of enactment." 603 U.S. at 400 (quoting *Wisconsin Central Ltd. v. United States*, 585 U.S. 274, 284 (2018)). Because the TCPA does not define the term "telephone call," courts have looked to the everyday, common meaning of the term. *See, e.g.*, *Steidinger*, 182 F.4th at 535 (citing *Delaware v. Pennsylvania*, 598 U.S. 115, 127–28 (2023)). The TCPA was enacted in 1991, and the relevant question is what an ordinary person understood "telephone call" to mean at that time. Contemporaneous dictionary definitions from 1991 confirm that the ordinary meaning of "telephone" was "an instrument for reproducing ***sounds*** at a distance," and that "call" means "to get or try to get into communication by telephone." *Id.* (emphasis added); *see also Stockdale*, 825 F. Supp. 3d at 625–26 (relying on the 1990 edition of Webster's).

Those definitions describe a sound-based communication, not the transmission of written data as occurs through SMS text messages. The timeline of SMS technology development further supports this understanding, as the first text message was not sent until December 1992[2]—***after*** Congress enacted the TCPA. *Blow v. Bijora, Inc.*, 191 F. Supp. 3d 780, 786 n.3 (N.D. Ill. 2016), *aff'd on other grounds*, 855 F.3d 793 (7th Cir. 2017). Congress simply could not have intended for "telephone call" to include a form of communication that did not yet exist.

Common usage of these terms in no way casts doubt on this conclusion. An ordinary speaker who says that one person "called" another means that the person made a voice call; the speaker does not mean that the person sent a text, and no reasonable person would interpret the term "call" to refer to a text message. *See Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025) ("Certainly, no ordinary person would think of a text message as a telephone call."). Text messages are a distinct form of communication from "telephone call[s]," as that term was understood in 1991 and today. *See, e.g.*, *Steidinger*, 182 F.4th at 536-537 ("Text messages do not reproduce sounds, suggesting that they do not qualify as a new application of telephone call within the meaning of that term."); *Stockdale*, 825 F. Supp. 3d at 626–27 (holding that "'telephone call' could not include modern-day

---

[2] *See* Joanna Stern, *Happy 20th Birthday, Text Message, But You're Past Your Prime*, ABC News (Dec. 3, 2012), http://abcnews.go.com/Technology/happy–20th–birthday–text–mssage–now–past–prime/story?id=17864096.

text messages because text messages do not use a telephone to reproduce sounds at a distance.”). A text message may arrive on a device capable of placing voice calls (e.g., a cell phone), but the message itself is not a sound-based call. Treating every communication delivered through a modern telephone as a “telephone call” would sweep in app messages, push notifications, and other digital communications without any limiting principle—an absurd result that is not supported by the plain text of the TCPA.

### 3. The Statutory Structure Confirms Congress Intended a Narrower Remedy.

The surrounding provisions of the TCPA confirm this plain text reading of its private right of action. Section 227(a)(4) uses “telephone call ***or message***” in defining “telephone solicitation,” while § 227(c)(5) uses only “telephone call” in creating the private remedy. Congress’s inclusion of “or message” in one provision and omission of those words in the other must be given meaning. Otherwise, the added words in § 227(a)(4) would do no work. *See Davis*, 797 F. Supp. 3d at 1274 (“[C]ourts should presume that, when a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings.” (cleaned up)); *see also Tomaszczuk v. Whitaker*, 909 F.3d 159, 166 (6th Cir. 2018) (“[D]ifferent words in a statute have different meanings”).

*Steidinger* adopted similar structural reasoning, explaining that Congress’s use of “telephone solicitation” in § 227(c)(1-4)—a term defined to include a call or

message—alongside the narrower phrase "telephone call" in § 227(c)(5) reinforces the conclusion that the private remedy is more limited. *Steidinger*, 182 F.4th at 536-37. Further, Congress already confronted an analogous form of text-based communication when it enacted the TCPA in 1991, and chose to treat it as a message, not a call. Section 227(d)(1) sets standards for 'send[ing] any message' via a telephone facsimile machine—equipment capable of transcribing 'text or images' between paper and an electronic signal for transmission over a telephone line. 47 U.S.C. § 227(a)(3), (d)(1)(B). Congress thus categorized text-based, electronically transmitted communications as messages rather than calls. *Steidinger*, 182 F.4th at 536-37. The calls-versus-messages distinction embodied in § 227(c)(5) is therefore not a byproduct of technology Congress could not have anticipated; Congress drew that same line in 1991 using the text-based technology that did exist.

Section 227(b) supplies an additional contrast. Congress used the broad phrase 'any call' in § 227(b)(1)(A), and the FCC's implementing regulation expressly defines 'call' for that provision to include text messages. 47 U.S.C. § 227(b)(1)(A); 47 C.F.R. § 64.1200(a)(9). That explicit inclusion is conspicuously absent from § 227(c)(5) and its implementing regulations in §§ 64.1200(c) and (d), which refer only to 'telephone call[s]' and 'telephone solicitation[s]' without mentioning text messages.

Congress's later treatment of text messages confirms this interpretation. The 2018 RAY BAUM'S Act amended § 227(e) to address misleading Caller ID information transmitted in connection with "any voice service or text messaging service" and to distinguish "a call made using a voice service" from "a text message sent using a text messaging service." Pub. L. No. 115-141, div. P, § 503(a), 132 Stat. 348, 1091–92 (2018) (codified at 47 U.S.C. § 227(e)). In doing so, Congress defined text message as entirely distinct from a telephone call— stating that a text message "*does not include*" a "real-time, two-way voice [] communication" (i.e., a telephone call). § 227(e)(8)(C)(iii)(I). The 2018 amendment shows that "Congress knows how to include text messages when it wants to," yet it failed to do so for § 227(c)(5). *Stockdale v. Skymount Prop. Grp., LLC*, 825 F. Supp. 3d 622, 626 n.7 (N.D. Ohio 2026).

Congress has not amended Section 227(c) to include text messages, even though it clearly understands the difference between a telephone call and a text. If Congress intended for the term "telephone call" to include text messages in Section 227(c), the delineation in Section 227(e) would be meaningless; Congress would have just prohibited "calls" using false Caller ID information. *See Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1162 (9th Cir. 2023) (quoting *Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249 (1985)) ("If voice calls encompassed text messages, the inclusion of the term text message would be

surplusage, and Congress would have written the statute in a manner contrary to a basic canon of statutory construction, that a statute should be interpreted 'so as not to render one part inoperative.'").

The combined text of Section 227(c), legislative history, and broader statutory structure leave no basis for treating a text message as a "telephone call" under § 227(c)(5). Plaintiff's Complaint reflects that she received only texts. Because the statutory trigger (i.e., a telephone call) is absent, Plaintiff's claim fails regardless of the number of messages, the content of the promotions, or her alleged registration on the National Do-Not-Call Registry.

### C. The FCC's Prior Interpretations of the TCPA Cannot Salvage Plaintiff's Claim

The FCC's prior interpretations of the TCPA cannot salvage Plaintiff's claims. The agency's principal text-message guidance arose under § 227(b), and its later references to texts do not answer what "telephone call" means in the context of § 227(c)(5). Further, even if the FCC had issued regulations addressing this issue, it lacks the ability to create a private remedy that Congress did not authorize.

#### 1. The FCC's Orders Do Not Address § 227(c)(5)'s Private Right of Action.

The 2003 Order does not interpret § 227(c)(5). Paragraph 165—which treats text messages as calls—appears in the portion of the Order addressing calls made using an automatic telephone dialing system or an artificial or prerecorded message.

It cites § 227(b)(1)(A)(iii) and the FCC's § 227(b) regulation, 47 C.F.R. § 64.1200(a), not § 227(c)(5) or the DNC regulation in § 64.1200(c). *In re Rules & Regulations*, 18 FCC Rcd. at 14116 ¶ 165.

Section 64.1200(e) does not cure this mismatch. It states that paragraphs (c) and (d) apply to persons making telephone solicitations or telemarketing calls or text messages to wireless numbers "to the extent described" in the 2003 Order. The reference incorporates the Order's limited scope; it does not convert the Order's § 227(b) discussion into an interpretation of § 227(c)(5). And even if § 64.1200(e) were read to regulate text messages under § 227(c), it would still not create a private action beyond the "telephone call" language Congress enacted.

The FCC's treatment of text messages under § 227(c)(3) likewise does not answer the private right of action question. Section 227(c)(3) directs the FCC to establish a national database for subscribers who object to telephone solicitations, while § 227(c)(5) specifies when an individual may sue. Congress used different language for the regulatory program than it used for the private remedy. The former cannot silently broaden the latter. Nor can the FCC's regulation itself create a cause of action. As the Supreme Court held in *Sandoval*, a private right of action to enforce federal law must be created by Congress, not an administrative agency. 532 U.S. at 286. A regulation may ***implement*** a statutory remedy; it cannot conjure a private cause of action that the statute does not authorize. *Id.* at 291.

2. The FCC's Interpretation Is Not Entitled to Deference.

*Loper Bright* eliminated the premise that an agency's reasonable interpretation controls whenever statutory text is ambiguous. Courts must exercise independent judgment and determine the statute's best meaning using traditional interpretive tools. 603 U.S. at 394–95, 400. The Court's obligation does not change because the FCC has expressed a contrary view.

*McLaughlin* applied that rule specifically to TCPA enforcement proceedings. It held that district courts are "not bound by the agency's interpretation" and instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording the agency's interpretation "appropriate respect." 606 U.S. at 155, 168. Here, the ordinary meaning of "telephone call," the statutory structure, and Congress's later use of text-specific language all point in the same direction. The FCC's contrary position does not and cannot displace that conclusion. *Steidinger*, 182 F.4th at 538-39.

The FCC's view also lacks persuasive force under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). The 2003 Order never addressed the text of § 227(c)(5), never explained why "telephone call" includes written messages, and relied on a different statutory prohibition. The FCC's later extension of DNC protections to text messages came decades after enactment and did not purport to define the private remedy's statutory trigger. *See* 2023 Order, *In re Rules & Reguls.*, 38 F.C.C. Rcd.

12247, 12256-57 (2023). An interpretation that does not engage the relevant text cannot carry persuasive weight on that text.

3. Congressional Silence Does Not Constitute Ratification.

Plaintiff may note that Congress amended the TCPA several times after the FCC began treating texts as calls and did not expressly repudiate that interpretation. But congressional silence is not ratification. As the Supreme Court has explained, when Congress has not comprehensively revised a statutory scheme, it is impossible to say with assurance that its failure to act represents affirmative approval. *Sandoval*, 532 U.S. at 292. Further, congressional inaction with respect to the treatment of text messages under the TCPA "cuts both ways" and does not support Plaintiff's position: Congress has affirmatively amended other provisions of § 227 to expressly cover text messages—including the 2018 amendment to § 227(e), which added definitions for "text message" and "text messaging service" and distinguished between "a call made using a voice service" and "a text message sent using a text messaging service," *see* Consolidated Appropriations Act, sec. 503(a), § 227(e)(1), (8), 132 Stat. 348, 1091–92 (2018)—yet it has never made a corresponding amendment to § 227(c)(5). *Steidinger*, 182 F.4th at 539. In 2019, Congress likewise used the formulation "a call made or a text message sent" in amending another TCPA provision. Congress left § 227(c)(5)'s "telephone call" language unchanged. *See*

Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, Pub. L. No. 116-105, § 10(a), 133 Stat. 3274, 3284 (2019).

Congress thus demonstrated—twice in two years—that it understands the distinction between calls and text messages and knows how to include text messages when it intends to. Its decision to leave § 227(c)(5)'s "telephone call" language untouched, while expressly referencing text messages elsewhere, is strong evidence that the omission was intentional. *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 393–94 (2015) ("Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another."). While Plaintiff will likely point to some aspect of the legislative history to argue that text messages are encompassed by the TCPA's private right of action, nothing therein can overcome the plain meaning of the term "telephone call" employed in the statute. In fact, legislative inaction here directly undermines Plaintiff's position.

***

The foregoing textual and structural analysis compels the conclusion that § 227(c)(5) does not encompass text messages. Even if the Court were to consider the FCC's prior guidance or policy-based arguments, those considerations cannot alter the result dictated by the plain language and structure of the statute.

### D. Policy Arguments Cannot Override the Plain Language of the Statute

Plaintiff may contend that excluding text messages would undermine the TCPA's purpose of protecting consumers from intrusive telemarketing. Policy, however, cannot alter plain language. *See Davis*, 797 F. Supp. 3d at 1274-75 ("[T]he court's role is not to look beyond clear language to ascertain Congress's purpose."). The Supreme Court has rejected the premise that general concern about intrusive telemarketing authorizes courts to adopt a broad definition inconsistent with Congress's chosen language. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 408-409 (2021) ("That Congress was broadly concerned about intrusive telemarketing practices, however, does not mean it adopted a broad autodialer definition."); *see also Steidinger*, 182 F.4th at 536 (rejecting "'the march of technology' standing alone as sufficient to identify the meaning of statutory language.").

Nor is it irrational for Congress to distinguish between communications. "Congress's general concern about intrusive telemarketing practices doesn't necessarily mean that it adopted a broad definition of telephone call." *Steidinger*, 182 F.4th 532 at 536. Further, "Congress could reasonably conclude that unwanted telephone calls are more bothersome and intrusive than unwanted text messages, and it could provide broader protections against the former than the latter." *Davis*, 797 F. Supp. 3d at 1275. This distinction has both a textual and practical basis. Congress found that telemarketing calls pose a public safety risk because they seize telephone

lines needed for emergency or medical assistance. Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2, 105 Stat. 2394, 2394; *Steidinger*, 182 F.4th at 540. Text messages do not tie up a phone line in the same way and can be read at the recipient's convenience, so they do not implicate those same concerns. It is therefore unsurprising—and at minimum reasonable—that Congress limited § 227(c)(5)'s private right of action to telephone calls rather than extending it to text messages as well. *Id.*

This result does not leave text messaging wholly unregulated. The FCC retains authority to administer the National Do-Not-Call Registry and enforce the regulatory protections established under § 227(c)(3)—and Congress remains free to amend § 227(c)(5) if it determines that the private remedy should cover texts. The absence of a private action for this particular statutory violation is not a license to ignore the regulations; it is a consequence of the remedy Congress chose to provide.

If the statute's text does not adequately address modern messaging technology, the remedy lies with Congress, not the courts. *Stockdale*, 825 F. Supp. 3d at 627; *Jones*, 792 F.Supp.3d at 901 ("It is for Congress to respond to the issues presented in this case and to address the realities of today's technology . . . ."). The Court's role is to apply the best reading of the statute enacted in 1991, not to revise § 227(c)(5) in response to changing technology or policy preferences. Because Plaintiff alleges only text messages, policy arguments cannot save her claim.

## V. CONCLUSION

Crumbl respectfully requests that the Court enter judgment on the pleadings in its favor, together with such other relief as the Court deems just and proper.

Dated: August 20, 2026

Respectfully submitted,

**FOLEY & LARDNER LLP**

*/s/ John J. Atallah*
John J. Atallah
Foley & Lardner LLP
555 S. Flower Street, Suite 3300
Los Angeles, CA 90071-2418
213.972.4834
jatallah@foley.com

*Counsel for Defendant*