**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| Victoria Soboleski, individually and on behalf of all others similarly situated, | : | Case No. 5:25-cv-11839-JEL-DRG |
| Plaintiff, | : | |
| v. | : | Judith E. Levy, United States District Judge |
| CRUMBLE LLC, | : | |
| Defendant. | : | David R. Grand, U.S. Magistrate Judge |

______________________________________/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff Soboleski hereby submits her opposition to Defendant Crumble LLC's motion for judgment on the pleadings. ECF No. 24. Defendant's motion should be denied in its entirety.

In it, Defendant Crumble urges this Court to find that the privacy protections of the Telephone Consumer Protection Act's ("TCPA") Do Not Call provisions exclude text solicitations. More specifically, Crumble argues the Court should adopt a minority view, based on out-of-circuit cases, and that is at odds with the plain language of the statute, years of TCPA enforcement and the FCC's guidance, and to decide that consumers are not protected from telemarketers' spam text message

solicitations even after registered their telephone numbers on the National Do Not Call Registry. According to Defendant Crumble, the TCPA's Do Not Call List provisions and its privacy protections are reserved only for voice solicitations.

But Defendant's position is wrong. As noted, a majority of courts to consider this precise issue post-*McLaughlin* have rejected Defendant's argument, instead agreeing with Plaintiff and holding that text messages are "calls" within the meaning of section 227(c) of the TCPA. This Court should do the same.

Such a conclusion makes good sense because the plain language of the statute itself supports it and, further, that finding aligns the Do-Not-Call provisions' private right of action in section 227(c)(5) with the surrounding substantive provisions, the TCPA when read as a whole, and is consistent with the provisions' express purpose to protect residential consumers' from unwanted telephone solicitations.

Dated: September 10, 2026

Respectfully submitted,

By: */s/ Avi R. Kaufman*
Avi R. Kaufman
KAUFMAN P.A.
237 S Dixie Highway, Floor 4
Coral Gables, Florida 33133
Telephone: (305) 469-5881
kaufman@kaufmanpa.com

Anthony I. Paronich
PARONICH LAW, P.C.

350 Lincoln St., Suite 2400
Hingham, MA 02043
Telephone: 617-485-0018
anthony@paronichlaw.com

*Counsel for Plaintiff and the putative Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 10, 2026, I filed this document with the Clerk of Court using its CM/ECF system, which automatically sends electronic notifications of this filing to all attorneys of record in this action.

/s/ Avi R. Kaufman

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| Victoria Soboleski, individually and on behalf of all others similarly situated, | : | Case No. 5:25-cv-11839-JEL-DRG |
| Plaintiff, | : | |
| v. | : | Judith E. Levy, United States District Judge |
| CRUMBLE LLC, | : | David R. Grand, U.S. Magistrate Judge |
| Defendant. | : | |

_______________________________________/

**PLAINTIFF'S BRIEF IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

ISSUE PRESENTED ..... i

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ..... ii

INTRODUCTION ..... 1

ARGUMENT ..... 1

I. The TCPA's do-not-call provisions authorize the FCC to prohibit text messages. ..... 1

A. The plain meaning of the word "call" includes text messages. ..... 1

B. That interpretation of the word "call" aligns section 227(c)'s private right of action with its substantive provisions. ..... 4

C. Crumble's case for a narrow interpretation is unpersuasive. ..... 6

D. Any doubt that section 227(c) covers text messages should be resolved by deferring to the FCC's longstanding interpretation that text messages are covered. ..... 12

CONCLUSION ..... 14

## TABLE OF AUTHORITIES

*Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 W.V./Ky./Oh.*, 708 F.3d 737 (6th Cir. 2013) .......... 2
*Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195 (S.D.N.Y. 2024) .......... 6
*Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270 (N.D. Fla. 2025) .......... 10, 12
*Dawson v. Porch.com*, No. 2:20-cv-00604-RSL, 2024 U.S. Dist. LEXIS 206363 (W.D. Wash. Nov. 13, 2024) .......... 13
*Delek US Holdings, Inc. v. United States*, 32 F.4th 495 (6th Cir. 2022) .......... 2
*Diamond v. Chakrabarty*, 447 U.S. 303 (1980) .......... 9
*Harriel v. Bealls, Inc.*, No. 8:25-cv-1165-TPB-SPF, 2025 U.S. Dist. LEXIS 158157 (M.D. Fla. Aug. 15, 2025) .......... 6
*Henson v. Santander Consumer USA Inc.*, 582 U.S. 79 (2017) .......... 3, 12
*Howard v. Republican Nat'l Comm.*, 164 F.4th 1119 (9th Cir. 2026) .......... 11
*Hudson v. Palm Beach Tan, Inc.*, No. 1:23CV486(WO)(JEP), 2024 U.S. Dist. LEXIS 165676 (M.D.N.C. Aug. 12, 2024) .......... 4
*Hulce v. Zipongo Inc.*, 132 F.4th 493 (7th Cir. 2025) .......... 7
*Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365 (6th Cir. 2015) .......... 4, 9
*Ksiazkiewicz v. Woods Basement Sys.*, No. 4:25-cv-1623-MAL, 2026 U.S. Dist. LEXIS 172031 (E.D. Mo. Aug. 3, 2026) .......... 3, 11
*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) .......... 15, 16
*Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1005 (N.D. Ill. 2010) .......... 4, 10
*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025) 15
*Mujahid v. Newity, LLC*, No. 25 C 8012, 2025 U.S. Dist. LEXIS 221088 (N.D. Ill. Nov. 10, 2025) .......... 3
*New Prime Inc. v. Oliveira*, 586 U.S. 105 (2019) .......... 10
*Owen-Brooks v. Homes*, Civil Action No. 25-15801, 2026 U.S. Dist. LEXIS 188452 (D.N.J. Aug. 21, 2026) .......... 2, 11
*Pepper v. GVG Capital LLC*, 677 F. Supp. 3d 638, 643 (S.D. Tex. 2023) .......... 8
*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir 2009) .......... 2, 7, 11
*Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168 (2025) .......... 16
*South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329 (1998) .......... 14
*Squillacote v. United States*, 739 F.2d 1208 (7th Cir. 1984) .......... 10
*Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532 (7th Cir. 2026) .......... 8, 9, 12

*Stockdale v. Skymount Prop. Grp., LLC*, No. 1:25 CV 1282, 2026 U.S. Dist. LEXIS 42954 (N.D. Ohio Mar. 3, 2026) .......... 8
*Wilson v. Medvidi Inc.*, No. 5:25-cv-03996-BLF, 2025 U.S. Dist. LEXIS 198827 (N.D. Cal. Oct. 7, 2025) .......... passim
*Wilson v. Skopos Fin.*, LLC, No. 6:25-cv-00376-MC, 2025 U.S. Dist. LEXIS 138638 (D. Or. July 21, 2025) .......... 15
*Wis. Cent. Ltd. v. United States*, 585 U.S. 274 (2018) .......... 9

**Statutes**

47 U.S.C. § 227(a) .......... 6, 7
47 U.S.C. § 227(b) .......... 4, 10
47 U.S.C. § 227(c) .......... passim
47 U.S.C. § 227(e) .......... 12, 13
Consolidated Appropriations Act of 2018. Pub. L. No. 115-141, div. P, § 503(a), 132 Stat. 348, 1092–93 (2018) .......... 12, 13

**Other Authorities**

Black's Law Dictionary (6th ed. 1990) .......... 5
*Hernandez*, 2018 WL 6830220, at *1 ¶ 3 (F.C.C. Dec. 21, 2018) .......... 4
Webster's Third New International Dictionary (2002) .......... 2

**Regulations**

18 FCC Rcd. 14014, 14115 ¶ 165 (2003) .......... 4
38 FCC Rcd. 12247, 12256–57 ¶ 26 (2023) .......... 4
47 C.F.R. § 64.1200(e) .......... 4

## ISSUE PRESENTED

1. Does the private right of action in section 227(c)(5) of the Telephone Consumer Protection Act permit enforcement of FCC rules that prohibit sending commercial text messages to telephone numbers registered on the National Do Not Call Registry.

**Plaintiff's answer: Yes.**

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

- *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024)
- *Pickens v. Hamilton-Ryker IT Solutions, LLC*, 133 F.4th 575 (6th Cir. 2025)
- *Keating v. Peterson's Nelnet, Inc.*, 615 F. App'x 365 (6th Cir. 2015)
- *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009)
- *Mujahid v. Newity, LLC*, No. 25 C 8012, 2025 U.S. Dist. LEXIS 221088 (N.D. Ill. Nov. 10, 2025)
- *Wilson v. MEDVIDI Inc.*, No. 5:25-cv-03996-BLF, 2025 U.S. Dist. LEXIS 198827 (N.D. Cal. Oct. 7, 2025)
- *Wilson v. Skopos Fin., LLC*, No. 6:25-cv-00376-MC, 2025 U.S. Dist. LEXIS 138638 (D. Or. July 21, 2025)

## INTRODUCTION

This Court should deny Defendant Crumble LLC's ("Defendant" or "Crumble") motion for judgment on the pleadings in its entirety.

As the majority of district courts to evaluate the issue post *McLaughlin Chiropractic* has concluded, text messages qualify as "calls" under the TCPA's National Do Not Call Registry ("DNCR") provision and are subject to the same restrictions as voice solicitations. Holding otherwise would nullify Congress's protections granted by the TCPA, allow telemarketers to exploit the most dominant form of communication today, and erode consumer trust.

## ARGUMENT

### I. The TCPA's do-not-call provisions authorize the FCC to prohibit text messages.

Defendant Crumble contends that a single use of the phrase "telephone call" in section 227(c)(5)'s private right of action means that the Do Not Call List rules cannot apply to text messages. *See* ECF No. 24. That's incorrect. The plain meaning of the word "call," long recognized by other courts and the FCC, refutes that argument. The statutory context confirms that a text can be a "call." And Crumble's arguments in support of its contrary interpretation do not withstand scrutiny.

#### *A. The plain meaning of the word "call" includes text messages.*

To interpret a statutory term, courts look to its "ordinary meaning" when the statute was enacted, often "by reference to dictionaries in use at the time." *Delek US*

*Holdings, Inc. v. United States*, 32 F.4th 495, 498 (6th Cir. 2022). Here, the "ordinary, contemporary, common meaning" of the word "call" in this context is "'to communicate with or try to get into communication with a person by a telephone.'" *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–54 & n.3 (9th Cir 2009) (quoting Webster's Third New International Dictionary (2002)). Like other courts, the Sixth Circuit has held that this definition—any attempt to communicate with someone by telephone—is the meaning of "telephone call" that Congress intended in 1991, when the TCPA was enacted. *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 W.V./Ky./Oh.*, 708 F.3d 737, 742 (6th Cir. 2013).

And texting is, of course, a means of communicating with someone by telephone. So the established definition of "telephone call" readily encompasses texts. *See, e.g.*, *Owen-Brooks v. Homes*, Civil Action No. 25-15801, 2026 U.S. Dist. LEXIS 188452, at *9 (D.N.J. Aug. 21, 2026); *Ksiazkiewicz v. Woods Basement Sys.*, No. 4:25-cv-1623-MAL, 2026 U.S. Dist. LEXIS 172031 (E.D. Mo. Aug. 3, 2026); *Wilson v. Medvidi Inc.*, No. 5:25-cv-03996-BLF, 2025 U.S. Dist. LEXIS 198827, at *3 (N.D. Cal. Oct. 7, 2025); *Mujahid v. Newity, LLC*, No. 25 C 8012, 2025 U.S. Dist. LEXIS 221088, at *5 (N.D. Ill. Nov. 10, 2025).

The established meaning of the word "call" is especially clear in the nearby autodialer provisions in section 227(b) of the original TCPA. Absent contrary evidence, a statutory word or phrase is presumed to bear a consistent meaning

throughout a statute. *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017). The word "call" is used extensively in the provisions of the statute that prohibit automatic dialing technology and robocalls, which were also part of the statute when it was first enacted in 1991. Most notably, section 227(b) prohibits using autodialer or robocall technology "to make any call … to any telephone number assigned to a paging service." 47 U.S.C. § 227(b)(1)(A)(iii). A typical paging device in the early 1990s would have displayed an incoming message as written text—usually displaying a phone number to call. So the use of the word "call" in connection with pagers in section 227(b) establishes "that the term 'call' cannot invoke only the common usage … in which a 'call' refers to oral communication between two parties via telephone." *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1005 (N.D. Ill. 2010).

Courts have therefore "routinely found that the phrase 'call' in subsection (b) … includes text messages." *Hudson v. Palm Beach Tan, Inc.*, No. 1:23CV486(WO)(JEP), 2024 U.S. Dist. LEXIS 165676, at *7 (M.D.N.C. Aug. 12, 2024); *see, e.g.*, *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). And that "supports the interpretation that the term 'call' as used in § 227(c) also encompasses 'text messages.'" *Mujahid*, 2025 U.S. Dist. LEXIS 221088, at *5. Likewise, the FCC determined as early as 2003 that, when the TCPA says "call," it "encompasses both voice calls and text calls to wireless numbers." 18 FCC Rcd.

14014, 14115 ¶ 165 (2003). The FCC first announced its interpretation of the word "call" in the context of the TCPA's autodialer provisions, presumably because those provisions of the statute use the word more extensively. *See Medvidi*, 2025 U.S. Dist. LEXIS 198827, at *3. But the FCC has since confirmed, including in a formal regulation, that the meaning of the word "call" is the same in the Do Not Call List context. *See* 47 C.F.R. § 64.1200(e); 38 FCC Rcd. 12247, 12256–57 ¶ 26 (2023); *Hernandez*, 2018 WL 6830220, at *1 ¶ 3 (F.C.C. Dec. 21, 2018). That interpretation reflects "the plain meaning of the statutory text as it has been understood by consumers, the FCC, and courts since the TCPA's passage." *Medvidi*, 2025 U.S. Dist. LEXIS 198827, at *5.

***B. That interpretation of the word "call" aligns section 227(c)'s private right of action with its substantive provisions.***

Crumble's argument focuses mainly on the use of the word the "call" in section 227(c)(5). But reading section 227(c)(5)'s private right of action in context with the substantive Do Not Call List provisions of section 227(c) further confirms that text messages are covered. To see why, start with the core of section 227(c)—its prohibition on "making or transmitting a telephone solicitation to the telephone number of any subscriber" on the Do Not Call List. 47 U.S.C. § 227(c)(3)(F). Text messages, of course, are "ma[de] or transmitt[ed]" to a "telephone number." *Id.* And it is well-established that the residential telephone "subscriber[s]" protected by the Do Not Call List include cell phone subscribers. *See, e.g.*, *Harriel v. Bealls, Inc.*,

No. 8:25-cv-1165-TPB-SPF, 2025 U.S. Dist. LEXIS 158157, at *3 (M.D. Fla. Aug. 15, 2025); *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203 & n.4 (S.D.N.Y. 2024) (collecting cases).

The term "telephone solicitation" also clearly encompasses text messages. The statute expressly defines a "telephone solicitation" to mean "a telephone call or message … which is transmitted to any person" for commercial purposes. 47 U.S.C. § 227(a)(4) (emphasis added). That reference to a "call or message" covers texts even more clearly than the word "call" standing alone. As explained above, "the ordinary, contemporary, and common meaning" the word "call" in the TCPA includes text messages. *Satterfield*, 569 F.3d at 953–54 & n.3; *see supra*, Part I.A. And contemporary definitions of the word "message" do too—a message was "[a]ny notice, word, or communication, *no matter the mode and no matter how sent*." *Message*, Black's Law Dictionary (6th ed. 1990) (emphasis added). More generally, the definition of "telephone solicitation" focuses not on a communication's form but on whether it has "the purpose of encouraging" various kinds of commercial transactions. 47 U.S.C. § 227(a)(4); *see, e.g.*, *Hulce v. Zipongo Inc.*, 132 F.4th 493 (7th Cir. 2025) (Do Not Call List liability turned on whether a text message had the requisite commercial purpose). At the same time, the statute uses broad, inclusive language to describe how such a communication might be conveyed—the FCC is directed to prohibit "making *or* transmitting" a telephone solicitation to "any" listed

number, and a telephone solicitation is a "call *or* message" that is "transmitted to *any* person." 47 U.S.C. § 227(a)(4), (c)(3)(F) (emphases added). Congress presumably used all that broad and disjunctive language to capture a wide range of communication mediums, including text messages. *See Medvidi*, 2025 U.S. Dist. LEXIS 198827, at *5 (explaining that the "telephone solicitation" definition "makes clear that Congress was more concerned with the purpose of the telephone communications … than the form in which those communications are transmitted"); *Pepper v. GVG Capital LLC*, 677 F. Supp. 3d 638, 643 (S.D. Tex. 2023) (similar).

Finally, the purpose of the Do Not Call List provisions further supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). And nothing in the TCPA suggests that Congress thought "oral messages were more invasive or objectionable than written ones." *Medvidi*, 2025 U.S. Dist. LEXIS 198827, at *5.

***C. Crumble's case for a narrow interpretation is unpersuasive.***

Crumble would have this Court interpret the Do Not Call List provisions more narrowly, insisting that the words "telephone call" in section 227(c)(5) can only mean "voice call," and therefore the statute categorically excludes text messages. Its arguments rely primarily on out-of-circuit cases, including *Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532 (7th Cir. 2026), *Stockdale v. Skymount Prop. Grp., LLC*,

No. 1:25 CV 1282, 2026 U.S. Dist. LEXIS 42954 (N.D. Ohio Mar. 3, 2026), and their progeny. *See* ECF No. 24, PageID 436-37. But none of the arguments made by Defendant or by those cases is persuasive.

First, Crumble (echoing *Steidinger*), insists that "telephone call" cannot encompass text messages because "text messages did not exist in 1991." ECF 24, PageID 436; *see also Steidinger*, 182 F.4th at 536.

But that's not how statutory interpretation works. It's true that text messaging did not exist in 1991, so Congress didn't have texting specifically in mind. *See Keating*, 615 F. App'x at 370; *Medvidi*, 2025 U.S. Dist. LEXIS 198827, at *4. Statutes are not "confined to the particular applications contemplated by the legislators." *Diamond v. Chakrabarty*, 447 U.S. 303, 315–16 (1980). "While every statute's meaning is fixed at the time of enactment," it is commonplace that "new applications may arise in light of changes in the world." *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018). That's why a 1991 law that said "no vehicles in the park" would prohibit Cybertrucks and Priuses, not just Mustangs and Corollas. *See Squillacote v. United States*, 739 F.2d 1208, 1213 (7th Cir. 1984) (similar example with Volkswagens).

The same is true here. "In determining whether section 227(c) applies to text messages, the Court looks to the plain meaning of the text rather than the specific facts or technology that Congress may have had in mind in 1991 at the time of the

TCPA's passage." *Medvidi*, 2025 U.S. Dist. LEXIS 198827, at *3. The 1991 meaning of "call"—which "refers to both oral and written communications"—is what matters. *Id.*; *see Lozano*, 702 F. Supp. 2d at 1007.

Next, Defendant claims that even if text messaging existed in 1991, a normal person wouldn't refer to a text message as a telephone call or that wasn't the term's common usage. ECF No. 24, PageID 445-46. *Steidinger* and another district court also relied on that same logic—both found it impossible to read "call" in anything but the familiar colloquial sense, and so concluded that the "analysis begins and ends there." *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025).

But modern colloquial usage is irrelevant where statutory meaning was fixed at enactment. *See New Prime Inc. v. Oliveira*, 586 U.S. 105, 114-16 (2019). And district courts have decided so even after *Steidinger. See Owen-Brooks*, 2026 U.S. Dist. LEXIS 188452, at *9 ("[T]he [c]ourt finds that even after *Loper-Bright*, section 227(c) protects against unsolicited text messages) (citing *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123 (9th Cir. 2026)); *Ksiazkiewicz*, 2026 U.S. Dist. LEXIS 172031, at *7-8. The question is whether the 1991 meaning of "call" encompassed communications by telephone generally, and courts have repeatedly held it does. *See Satterfield*, 569 F.3d at 953–54. Defendant's interpretation fares no better when it comes to the broader statutory context. Defendant cannot square its anomalous reading of section 227(c)(5)'s private right of action with the substantive

Do Not Call List provisions it exists to enforce. Defendant also has no good answer for nearby uses of the word "call" in section 227(b), the autodialer provisions of the original TCPA. Crumble and its cases do not dispute that "call" covers text messages in the autodialer provisions. Nor could they: the meaning of "call" is especially clear in section 227(b) because it's used there to describe a (typically text-focused) transmission to a "paging service." In response, all Crumble's cases say is that section 227(b) is a different provision and could in theory be broader than section 227(c). *See Steidinger*, 182 F.4th at 538; *Davis*, 797 F. Supp. 3d at 1274.

What's missing, however, is any credible reason to think that "call" actually does mean something broader in section 227(b) than in section 227(c). Absent good reason to think otherwise, a statutory term is presumed to have a consistent meaning throughout a statute. *See Henson*, 582 U.S. at 85. Crumble doesn't say why the meaning of "call" would differ between the two provisions. Nor does *Steidinger*. The only possible distinction comes from *Davis*, which notes that 227(b) says it's unlawful to make "any call" to various kinds of devices using an autodialer, whereas section 227(c) refers to a prohibited "telephone call." *See* 797 F. Supp. 3d at 1273. But, as explained above, the word "telephone" isn't doing any work here. And "any" is hardly unique to section 227(b)(1)(A); section 227(c) uses similarly expansive modifiers, requiring the FCC to "prohibit any person from making or transmitting a

telephone solicitation to the telephone number of any subscriber included" in the Do Not Call List. 47 U.S.C. § 227(c)(3)(F) (emphases added).

To the contrary, reading the word "call" differently in section 227(c)(5) than in section 227(b) would make no sense. If Congress wanted to limit only the private right of action in section 227(c)(5) to voice communications, implicitly doing so with the word "call" would have been a strange way to go about it. After all, the word "call" does include textual communication in other provisions of the statute. If Congress intended to cabin section 227(c)(5)'s private right of action to exclude text messages, it wouldn't have done so by using a term that elsewhere includes them. Congress would not have excluded text messages in section 227(c)(5) by using a term that in section 227(b) includes them. So "there is no reason to believe that ['call'] has a different meaning when used in the do-not-call provisions." *Dawson v. Porch.com*, No. 2:20-cv-00604-RSL, 2024 U.S. Dist. LEXIS 206363, at *13-14 (W.D. Wash. Nov. 13, 2024).

Finally, Crumble says that an entirely separate provision, added to the statute in 2018, means Congress knows how to distinguish between calls and text messages and thus should have done so with respect to section 227(c). ECF 24, PageID 436. Namely, Crumble cites definitions of "caller identification" found in the Consolidated Appropriations Act of 2018. Pub. L. No. 115-141, div. P, § 503(a), 132 Stat. 348, 1092–93 (2018); *see* 47 U.S.C. § 227(e)(8)(A)-(B). Those provisions

prohibit false or misleading "caller identification information," defined as information about the source of "a call made using a voice service or a text message sent using a text messaging service." 47 U.S.C. § 227(e)(8)(A). Crumble says that shows that a "call" and a "text message" are distinct. See ECF No. 24, PageID 449.

But, if anything, section 227(e)(8) actually shows the opposite: It reinforces that texts are calls in the lexicon of the TCPA. It describes a "text message" as something that comes from a "caller," just like a traditional voice call does. So the more natural takeaway is that section 227(e)(8) identifies two different types of calls—voice calls and text messages—both of which originate with a "caller" and therefore require "caller identification." Unlike Crumble's interpretation, that reading of section 227(e)(8) accords with the meaning of "call" as that word is used elsewhere in the TCPA.

And even if section 227(e) did distinguish between a "text message" and a "call" as Defendant Crumble contends, that wouldn't change the best reading of section 227(c). When Congress enacted section 227(e) in 2018, Congress directed that nothing therein "shall be construed to modify, limit, or otherwise affect any rule or order adopted by the [FCC] in connection with [the TCPA]." Pub. L. No. 115-141, div. P, § 503, 105 Stat. 348, 1094. That would include the FCC rules and orders that interpreted "call" to include text messages. Moreover, "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier

one." *South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 355 (1998). Surely, that's especially true here, where the Congress that enacted original TCPA in 1991 and the Congress that enacted section 227(e)(8) in 2018 legislated on opposite sides of a seismic shift in phone technology. The more meaningful reference point is the meaning of "call" in section 227(b), which was enacted at the same time as section 227(c), and which clearly uses "call" to refer to written messages.

### ***D. Any doubt that section 227(c) covers text messages should be resolved by deferring to the FCC's longstanding interpretation that text messages are covered.***

The best reading of the TCPA is that the word "call" includes text messages. But even if ambiguity remained, the FCC's longstanding interpretation confirms that conclusion. Congress expressly delegated authority to the FCC to craft and implement the Do Not Call regulations, including determining the rules "most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E); *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394–95 (2024) (courts continue to respect express delegations of discretionary authority to agencies). As one court recognized post-*Loper Bright*, section 227(c) "explicitly delegates such authority" to the FCC. *Wilson v. Skopos Fin.*, LLC, No. 6:25-cv-00376-MC, 2025 U.S. Dist. LEXIS 138638, at *11–12 (D. Or. July 21, 2025).

To be sure, *Chevron* no longer applies, and courts are not bound to adopt FCC interpretations reflexively. *See Loper Bright*, 603 U.S. at 412–13; *McLaughlin*

*Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025). But where Congress delegated authority to the FCC to implement the statute through open-ended standards concerning consumer privacy and regulatory effectiveness, the FCC's reasonable interpretation remains highly persuasive. *See Loper Bright*, 603 U.S. at 395. Crumble's argument to the contrary, and suggestion that the FCC's longstanding and well-reasoned interpretations should be cast aside and disregarded, is not persuasive. *See* ECF No. 24, PageID 450-53.

The FCC has consistently interpreted the TCPA's use of the word "call" to include text messages for more than two decades. *See* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003); 38 FCC Rcd. 12247, 12256–57 ¶ 26 (2023). The FCC reasonably explained that applying the Do Not Call rules to texts promotes consistent enforcement and avoids consumer and industry confusion. 38 FCC Rcd. at 12256–57 ¶¶ 26–27 & n.59. That interpretation is both reasonable and consistent with the TCPA's broader consumer protection purposes, and therefore warrants substantial respect. *See Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168, 180 (2025).

In short, the statutory text, structure, purpose, and longstanding regulatory interpretation all confirm that the TCPA's Do Not Call provisions apply to text messages. Crumble's contrary interpretation would create an artificial loophole that

undermines Congress's consumer-privacy objectives and conflicts with how courts, consumers, and the FCC have understood the statute for decades.

## CONCLUSION

For all of these reasons, Defendant Crumble LLC's motion for judgment on the pleadings should be denied in its entirety.

Dated: September 10, 2026

Respectfully submitted,

By: */s/ Avi R. Kaufman*
Avi R. Kaufman
KAUFMAN P.A.
237 S Dixie Highway, Floor 4
Coral Gables, Florida 33133
Telephone: (305) 469-5881
kaufman@kaufmanpa.com

Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln St., Suite 2400
Hingham, MA 02043
Telephone: 617-485-0018
anthony@paronichlaw.com

*Counsel for Plaintiff and the putative Class*