**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Victoria Soboleski,

Plaintiff,

v.

Crumble LLC,

Defendant.

Case No: 5:25-cv-11839-JEL-DRG

Judith E. Levy
United States District Judge

Mag. Judge: David R. Grand

/

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

Text messages are not telephone calls. Rather than deal with this reality, Plaintiff mischaracterizes the issues to reach points not in dispute. The relevant question is whether ***Congress*** created a private right of action, in 47 U.S.C. § 227(c)(5), that applies to text messages. That provision says "telephone call"—not "telephone solicitation," "telephone communication," or "text message." Plaintiff nonetheless spends fourteen pages arguing that the DNC regulatory program authorizes this lawsuit while barely engaging with the statutory trigger for the private remedy she invokes. However, a regulation cannot "conjure up a private cause of action that has not been authorized by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001).

Plaintiff argues that phone calls are to text messages as Cybertrucks are to Volkswagens—a new application of the same conduct Congress prohibited. (Opp.

at 7.) The analogy fails. A text message is not a new model of "telephone call" any more than a bicycle is a new model of motorcycle. Congress enacted the TCPA to address the "risk to public safety" from calls "seiz[ing] the telephone lines of public emergency services." TCPA § 2(5), 105 Stat. 2394. Text messages cannot seize phone lines or block emergency services. A telephone call rings and demands an answer; a text arrives silently and waits. That Plaintiff must redefine "telephone call" beyond recognition reveals the fundamental weakness of her position.

## I. The TCPA's Private Right of Action for Improper "Telephone Calls" Does Not Include Text Messages

In 1991, "telephone" meant "an instrument for reproducing sounds at a distance," and "call" meant "to get or try to get into communication by telephone." Webster's Ninth New Collegiate Dictionary (1991); *Steidinger v. Blackstone Med. Servs., LLC*, 182 F.4th 532, 536 (7th Cir. 2025). A "telephone call" was thus communication via sound. Text messages do not reproduce sound—full stop. Yet Plaintiff ignores the word "telephone" entirely, citing a definition of "call" (not "telephone call") from a ***2002*** dictionary and a Ninth Circuit case interpreting § 227(b), not § 227(c)(5). (Opp. at 2 (citing *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–54 & n.3 (9th Cir. 2009)).) Plaintiff cannot define "***telephone*** call" to encompass silent, written text messages without eviscerating the term's plain meaning—a term referring to an instrument for "transmitting sound (esp. speech)" via "acoustic vibrations." *The Oxford Encyclopedic English Dictionary* (1991).

Multiple courts have rejected *Satterfield* for this reason. *Richards v. Fashion Nova, LLC*, 2026 WL 847568, at *3 (S.D. Ind. Mar. 26, 2026); *James v. Smarter Contact, Inc.*, 828 F. Supp. 3d 1367, 1371 (M.D. Fla. 2026) ("[E]ven using the definition of 'call' as a verb, a text message is not communicating or attempting to communicate with someone by reproducing sounds at a distance.").

Plaintiff invokes the presumption of consistent usage, arguing that because "call" includes text messages in § 227(b)'s autodialer provision, the private remedy must align. (Opp. at 9.) But § 227(b)(1)(A) uses "***any*** call," while § 227(c)(5) uses "***telephone*** call"—different words with different meanings. *Steidinger*, 182 F.4th at 538–39. Reading "telephone call" to include text messages would also render "or message" in § 227(a)(4)'s definition of "telephone solicitation" surplusage—a result courts must avoid. *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1274 (N.D. Fla. 2025) ("Congress's use of the phrase 'telephone call or message' in a neighboring provision only undermines [plaintiff's] position"). Plaintiff ignores this problem entirely. Further, her reliance on *Ashland Hospital Corp. v. SEIU*, 708 F.3d 737 (6th Cir. 2013), is misplaced: that case interpreted § 227(b)(1)'s broader "any call" language, did not involve text messages, and was decided when *Chevron* deference still controlled. It no longer does. Section 227(c)(5) narrows the private remedy to "***telephone*** calls"—a subset of the broader regulated conduct. *See Davis*,

797 F. Supp. 3d at 1274 (noting that Congress routinely grants agencies wider regulatory latitude than private plaintiffs).

## II. Deference to the FCC's Autodialer Interpretation Cannot Override the Plain Meaning of the TCPA's Private Right of Action

Plaintiff relies on *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119 (9th Cir. 2026), which interpreted § 227(b), not § 227(c)(5). Plaintiff's only in-Circuit authority, *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015), "defer[red] to the reasonable interpretation of the Act offered by the FCC." That is precisely what courts may no longer do. The meaning of "telephone call" in § 227(c)(5) is a question of statutory interpretation reviewed *de novo*—not agency discretion subject to arbitrary-and-capricious review. *See Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168, 179–80 (2025); *Steidinger*, 182 F.4th at 538. Courts must now "independently determine" the statute's meaning "under ordinary principles of statutory interpretation[.]" *McLaughlin Chir. Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025). Every tool of statutory interpretation—the ordinary meaning of "telephone call," the statutory structure, and Congress's later use of text-specific language—points in the same direction. The FCC's contrary view does not and cannot displace that conclusion. *Steidinger*, 182 F.4th at 538–39.

Plaintiff invokes § 227(c)(1)(E) as an "express delegation" authorizing the FCC to define "call." (Opp. at 12-13.) But § 227(c)(1)(E) directs the FCC to "develop proposed ***regulations***" that are "most effective and efficient to accomplish

the purposes of this section"—not to redefine statutory terms that establish who may sue. Nowhere did Congress expressly delegate authority to "give meaning to a particular statutory term"—the narrow category *Loper Bright* distinguished from gap-filling. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394-95 & n.5 (2024). Interpreting "telephone call" to include text messages "would likely more than double the number of private causes of action authorized by the TCPA. Doubling the scope of the provision is not 'filling up the details.'" *McGonigle v. Pure Green Franchise Corp.*, 2026 WL 111338, at *2 (S.D. Fla. Jan. 15, 2026); *accord Radvansky v. 1-800-Flowers.com, Inc.*, 2026 WL 456919, at *4 (N.D. Ga. Feb. 17, 2026) (adopting same reasoning and dismissing § 227(c)(5) text-message claim); *Richards*, 2026 WL 847568, at *5 (same).

**III. Congress's Post-1991 Amendments Confirm That Texts Are Not Calls**

Plaintiff argues that § 227(e)(8)'s reference to "caller identification" for text messages proves texts are "calls." (Opp. at 11.) The argument backfires. If texts were "calls," Congress would not have needed to separately define "text message"—a definition that expressly excludes "a real-time, two-way voice or video communication." *See* § 227(e)(8)(C). These separate definitions confirm Congress views text messages and voice calls as categorically different.

Congress amended § 227(e) in 2018 and § 227(i) in 2019 to expressly address text messages—using the formulation "a call made ***or*** a text message sent"—yet left

§ 227(c)(5)'s "telephone call" language untouched. Section 227(e)'s savings clause cannot help Plaintiff. It protects existing rules from being deemed modified, but cannot ***expand*** § 227(c)(5)'s private remedy beyond the "telephone call" language Congress enacted. *Sandoval*, 532 U.S. at 286.

That Congress used text-specific language in neighboring provisions while leaving § 227(c)(5)'s "telephone call" language untouched is a structural observation about how Congress distinguishes between calls and text messages—not an inference about the 1991 Congress's subjective intent. (Opp. at 12 (quoting *South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 355 (1998) ("[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one"))). Congress has long been aware that § 227(c)(5)'s private right of action only applies to "telephone calls" but has declined to expand the remedy to texts. *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 391 (2015) ("Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another."); *Steidinger*, 182 F.4th at 539 (applying same principle to § 227(c)(5)).

## IV. Policy Cannot Override Plain Text

Plaintiff argues that excluding text messages undermines the TCPA's consumer-protection purpose. (Opp. at 1, 14.) The Supreme Court has rejected this reasoning: "That Congress was broadly concerned about intrusive telemarketing practices . . . does not mean it adopted a broad [definition]" in the statute's operative

provisions. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 408–09 (2021). "Congress could reasonably conclude that unwanted telephone calls are more bothersome and intrusive than unwanted text messages, and it could provide broader protections against the former than the latter." *Davis*, 797 F. Supp. 3d at 1275. Plaintiff's quarrel, like Duguid's, is with Congress, not with the growing number of courts that have correctly recognized that texts are not "telephone calls."

## V. Conclusion

Because § 227(c)(5) creates a private right of action only for "telephone calls," the Court should enter judgment in Crumbl's favor.

Dated: September 24, 2026

Respectfully submitted,

**FOLEY & LARDNER LLP**

*/s/ John J. Atallah*
John J. Atallah
Foley & Lardner LLP
555 S. Flower Street, Suite 3300
Los Angeles, CA 90071-2418
213.972.4834
jatallah@foley.com

Charles W. Niemann
Foley & Lardner LLP
777 E. Wisconsin Avenue
Milwaukee, WI 53202
414.297.5149
cniemann@foley.com

*Counsel for Defendant*